## RAILWAY EXPRESS AGENCY, Inc. v. SPAIN et al.

### No. 10037.

Court of Civil Appeals of Texas. Austin.

May 7, 1952.

Rehearing Denied May 28, 1952.

646

Bagby & Winters by Arthur P. Bagby, Austin, for appellant.

Wood & Wilcox, Georgetown, Ralph W. Yarborough, Tom H. Davis, Townsend & Johnson, Austin, for appellees.

HUGHES, Justice.

This is a suit for damages for personal injuries resulting in the death of Reuben F. Hunt.

Appellees, who were plaintiffs below, are the surviving widow of deceased, Ruth Faye Hunt Spain, her present husband, Floyd Spain, Billy Joe Hunt, J. C. Hunt, Larry Bill Hunt, minor children of deceased, and Mrs. Norvell Hunt, mother of deceased.

Defendants below were appellant, Railway Express Agency, Inc., and R. F. Bacon.

After all parties had rested and prior to the submission of any issue to the jury before whom this case was tried, the trial judge granted the motion of R. F. Bacon for an instructed verdict, the jury, however, receiving no instructions to return a verdict for Mr. Bacon. Judgment was subsequently rendered that appellees take nothing as to R. F. Bacon and there is no appeal from this portion of the judgment.

Based upon the verdict of a jury judgment was rendered for appellees for a substantial sum from which judgment appellant prosecutes this appeal.

Mr. Hunt, at the time of his death, was an employee of appellant and was then engaged in driving one of its delivery trucks in the usual course of his employment.

Appellant was eligible to carry but did not carry Workmen's Compensation Insurance as provided by our statutes.

Mr. Hunt's death occurred at about 2:30 P.M. on February 21, 1947, and immediately following the overturning of the truck he was driving which had just been hit by a half-ton pick-up truck driven by R. F. Bacon.

This collision occurred at or near the intersection of Rosedale Avenue and West 42nd Street in Austin, Texas.

The jury answered the following issue "Yes":

"Do you find from a preponderance of the evidence that the Defendant, Railway Express Agency, Inc.'s furnishing to deceased, Reuben F. Hunt, on February 21, 1947, a truck with the left hand door so constructed that it was impossible for the driver thereof to give the required hand signals when such door was closed, was negligence as that term has been defined to you in this charge?"

It also found that this negligence was a proximate cause of the death of Mr. Hunt.

The first point made by appellant is that the evidence was insufficient to support the above finding of negligence.

The truck being driven by Mr. Hunt was a standard one-ton Ford 1939 Model 60 chassis with a 9-inch rear extension to support a shelf extending back of the loading compartment. The body of this truck, however, was not a standard Ford body. It was a body manufactured by the Highland Body Manufacturing Company on specifications furnished by appellant.

The photograph of appellant's truck, shown below, was taken by a police officer shortly after the collision and after the truck had been raised to an upright position.

The picture shows the door to be wide open. The door is suspended on rollers and operated by hand; it rolls or glides forward until the door space is entirely closed. The door, itself, is partly panel and partly fixed glass, there being no opening in the door through which the operator could put his arm or hand and give traffic

signals, nor was there any portion of the door which could be so opened.

When the door was wide open the door space was 32½ inches. The door could be manually latched in this position. It is automatically locked when closed.

On the interior of the door, about 23½ inches from the floor, five holes have been punched and a barrel bolt fixed opposite thereto to engage any of such holes, except the first one from the rear, and securely locks the door in any one of the four intervening positions. At the first engageable hole the door opening was about 28½ inches wide; at the second about 18½ inches wide; at the third about 12 inches wide; and at the last about 5 or 6 inches wide.

An expert in the field of truck body design and a witness for appellant testified that at the first engageable hole the door lined up with his shoulder while seated in the driver's seat; that in the second engageable hole the door was, roughly 10 inches in front of his shoulders while seated in a normal position.

There is evidence that to secure the door in any of these intervening positions two hands are needed and that it could not be done while the truck was in motion.

It is necessary for the door to be open in order for the driver to give hand signals. Just how wide the door should be opened for this purpose is a matter about which conflicting opinions were given. One witness testified:

"Q. It (the door) could be adjusted to three or four positions; isn't that right? And in the event you pushed it to the second notch, did you attempt to give a hand signal when it was in the second notch? A. Yes, you would have to slide up on the steering wheel out of the seat to get your hand out.

"Q. I am talking about the second notch from the rear and not the front. A. Well, the door is way up like this (indicating), and you have to get way up against the wheel to get your hand out, and you have to fall all over the steering wheel to get your arm out to where anybody could see it. * * *

"Q. Isn't it a fact that without leaning or straining or getting into an uncomfortable position, you can give a plainly visible hand signal? A. You might get your hand out like this (indicating), but nobody could see it. You could reach up and put your hand like this, but who would see that much sticking out? To get your arm out, you have to lean way up like this.

"Q. That is in the second notch? A. That is in the notch the farthest back and the more you close it, the worse it would be."

Another witness testified:

"Q. * * * Mr. Webb, if you use that sliding catch and fasten your door partially open, does it leave you room, sitting in your normal position in the seat as a driver, to make hand signals with the door partially closed and fastened with your sliding catch? A. It doesn't give you enough arm room to do it.

"Q. You have to have the door completely open to properly make the hand signals? A. Yes, sir."

That it was unsafe to the driver for the truck to be operated with the door wide open was the opinion of this witness who testified:

"Q. * * * Mr. Allman, examine Plaintiffs' Exhibit No. 8, which the testimony shows is the Railway Express Company truck number 23022 with the left hand door completely open and the seat in the position it occupied at the time Mr. Hunt was killed. From your experience as an expert mechanic and as a practical operating garage man for 27 years in the repair of cars in Austin and from your examination of that truck in the condition in which you found it, did you form any opinion as to whether or not that truck with the door open all the way was or was not safe for the driver in driving in traffic in Austin? A. Yes, sir.

"Q. What was your opinion? A. It was unsafe.

"Q. Why? A. Because the seat is over where the least little turn, a man could slide out and fall out of it."

The statement of facts in this case contains more than eleven hundred pages and we have only sampled the evidence to demonstrate that the answer of the jury to the above issue is not without substantial support.

■ It is obvious and a matter of common sense knowledge that it is dangerous for the operator of a motor vehicle to sit opposite an open door.

It is true that this door could be held partly open in various positions. The first position of the door forward is, as appellant's witness testified, even with the driver's shoulder. Conceding, despite evidence to the contrary, that hand signals could be easily given with the door in this position, yet it is difficult to see how the safety of the driver could be much improved by pegging the door in this position because the open door space was reduced only about 4 inches leaving an opening of 28½ inches through which an average person could easily fall or be thrown.

The next position at which the door could be pegged open was 10 inches in front of the driver. It would be impossible for a driver to give proper hand signals with the door in this position without leaning forward, without putting, himself in an awkward position, and without losing some control of the truck's operation.

■ We are thoroughly satisfied that the jury was within its right in answering this issue as it did and we overrule appellant's first point.

The second and third points, briefed together, relate to the issue of proximate cause, appellant contending that even if it were negligent in the manner above indicated that such negligence was not a proximate cause of the fatal injuries to deceased especially since the jury found that the negligence of R. F. Bacon, driver of the other truck involved, was the sole proximate cause of the "collision."

We quote the following from appellant's brief as being a fair summary of the evidence as to how and under what circumstances the collision occurred:

"Mr. Bacon at the time of the accident was a retired plumber and electrical contractor, seventy-three years of age. He wore glasses and had them on at the time of the accident. His vision was good and there was no sun or other dazzling object shining in his eyes as he drove toward the intersection.

"Between one and two o'clock in the afternoon on the day of the accident, he was driving his 1939 Model Dodge one-half ton pick-up truck, in a Westerly direction on West 42nd Street in Austin, Texas, at a rate of speed between fifteen and twenty miles per hour. He was driving by himself. He considered his truck in perfect condition as he had had it thoroughly checked and overhauled about a month prior thereto. The brakes on the truck were in perfect working order; the windshield gave him full visibility; the windows on each side of the cab were down; the sun was shining and it was a fairly bright day. He was entirely familiar with the intersection of 42nd Street and Rosedale Avenue, having driven through such intersection on numerous occasions.

"As he approached the intersection he looked to his left then to his right and then straight ahead. He was approximately 30 or 40 feet back of the intersection when he looked to his left. Appellant's Exhibits Nos. 2, 3, 4, 5 and 7 were identified by Mr. Bacon as being true and correct pictures of the intersection from the various positions. Such photographs disclose that there were some small shrubs situated in the yard to his left as he approached the intersection, but these did not materially obstruct his vision.

"As he approached and entered the intersection, Mr. Bacon did not sound his horn nor apply his brakes. 'I was in the intersection when I applied my

brakes.' Mr. Bacon did not see the Express Company truck until immediately before the collision. 'Just a flash before the contact' was the first time he saw it. It was then that he applied his brakes.

"The minute he saw the Express Company truck he swerved to the left attempting to go around it. He did not apply his brakes until he saw the truck flash in front of him which was almost instantaneous with the impact. The right hand fender of his truck hit the back end of the Express Company truck, behind the rear wheels. * * * The Express Company truck, after the impact, commenced to turn in a northeasterly direction and struck the East curb on Rosedale Avenue. The driver of the Express Company truck never straightened up the truck after the impact. The curb where the truck turned over was between 8 and 9 inches in height and had no apron or skirt on it. * * * there were no other cars approaching in any direction at such time.

"* * * the Express Company truck was going North on Rosedale Avenue while Mr. Bacon was driving West on 42nd Street.

"Officer Priest, from the skidmarks, veer marks, and other evidence found in the intersection, determined that the collision had taken place approximately 4 feet East of the center line of Rosedale Avenue and 7 feet North of the center line of West 42nd Street, which would place it in the Northeast quadrangle of the intersection. The Express Company truck had passed more than half-way across the intersection when it was struck in the rear by the Bacon truck. He investigated the Express truck and found that the left panel door was open.

"The Express truck had gone from the 4100 block of Rosedale Avenue and, going North, it had crossed 42nd Street to the point of impact. After the impact, the Express Company truck moved approximately 40 feet in 'sort of a side or curved skid' or veer.

Mr. Bacon's truck left about 16 feet of skid marks."

A master has an absolute nondelegable continuing duty to furnish his servants suitable and safe instrumentalities with which to perform their duties and failure to discharge this duty is negligence. Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409.

The negligence of which the jury has convicted appellant was an ever present one. It was active at the time deceased received his fatal injuries.

The express truck turned over on and crushed the body of deceased. For this to occur deceased was, necessarily, outside the truck. The only exit, or at least the only reasonable exit, for deceased from the truck after having been struck by the Bacon truck was through the open door at his left. The door was open because of the negligence of appellant in furnishing deceased with the type of truck he was driving.

That the concurring negligence of Bacon was required for appellant's negligence to become operative is immaterial insofar as the liability of appellant for its own negligence is concerned. Robert R. Walker, Inc., v. Burgdorf, Tex.Sup., 244 S.W.2d 506; Amarillo Traction Co. v. Russell, Tex.Civ.App., 290 S.W. 905 (Amarillo, writ dism.).

The Walker case, supra, quotes with approval the following from the case of Texas Power & L. Co. v. Culwell, Tex. Com.App., 34 S.W.2d 820, 821:

"The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from consequences of negligence, if such negligence directly and proximately cooperates with the independent cause in the resulting injury."

We are of the opinion that the evidence supports the jury finding that the negligence of appellant was a proximate cause of the death of Mr. Hunt and will discuss under the next succeeding point the jury finding that the negligence of R. F. Bacon was the sole proximate cause of the "collision."

The fourth point is that there was irreconcilable conflict in the verdict of the jury.

The jury found that appellant was negligent in furnishing deceased with a truck the left hand door of which was so constructed that it was impossible for the driver to give hand signals with the door closed and that this negligence was a proximate cause of the death of deceased.

The jury also found that R. F. Bacon drove his truck into the right rear end of the truck driven by deceased when deceased's truck had the right of way and was more than half way across the intersection and that this was negligence on the part of Mr. Bacon which negligence "was the sole proximate cause of the collision."

The trial court, acting under Rule 279, Texas Rules of Civil Procedure, made an express finding that the collision between the two trucks "was not the sole proximate cause of the death of Reuben F. Hunt, or the damages sustained by plaintiffs."

We believe there is a substantial difference between the issues inquiring about the "sole proximate cause of Mr. Hunt's death" and those inquiring concerning "the sole proximate cause of the collision."

The trial court and the parties recognized this difference as is shown by the issues submitted to the jury. Many issues used one phrase and many used the other. If the trial court and the parties had intended for the same meaning to be attributed to both phrases then, no doubt, the same language would have been used.

We believe it to be fairly inferred from the record in this case and as found by the trial judge, that the collision, itself, was not the sole proximate cause of Mr. Hunt's death. Hence if Mr. Bacon's negligence was the sole proximate cause of the collision this is not incompatible with the fact, as found by the jury, that the negligence of appellant was a proximate cause of Mr. Hunt's death. The death of Mr. Hunt was caused by the concurring negligence of appellant and Mr. Bacon, even though the collision may have been entirely the fault of Mr. Bacon.

Appellant requested and the trial court refused to submit to the jury the following issue:

"Do you find from a preponderance of the evidence that the truck which Hunt was driving on the occasion in question was a usual and customary type of truck in general use by persons engaged in pick-up and delivery of goods, wares and merchandise of the general kind and character picked up and delivered by Railway Express?"

There was no error in this respect.

The requested issue inquired about an evidentiary matter relevant to but not conclusive of the primary issues of negligence. The requested issue, if answered favorable to appellant, would have had no controlling effect. The standard of conduct of persons is prescribed by law, not by custom or practice. El Paso Electric Co. v. Gregston, Tex.Civ.App., 170 S.W.2d 515 (El Paso); Wichita Valley R. Co. v. Durrett, Tex.Civ.App., 174 S.W.2d 329 (Fort Worth, writ ref.).

Appellant cites Railway Express Agency v. Robinson, Tex.Civ.App., 162 S.W.2d 984 (Waco, writ ref., w.o.m.), as holding to the contrary. The Court's decision in that case was supported by grounds other than the one involved here. We believe the Supreme Court's action in dismissing application for writ of error for want of merit indicates disapproval of what the Court said on this question. In any event we believe the cases cited by us above announce the correct rule of law and we, therefore, follow them and overrule appellant's fifth point.

Appellant's sixth and thirteenth points relate to its efforts to quash the jury panel from which the jury in this case was drawn because of remarks made to such panel by the Judge of one of the District Courts of Travis County and an ensuing local newspaper story about the matter.

Appellant also complains that he was not allowed to poll the jury, during the course of the trial, for the purpose of

asking each juror if he had read the newspaper story.

The following statement is attributed to the Judge as having been made to the jury panel:

"He said that there was a gentleman who was a very busy businessman, as well as I recall, who had a case in court, and the jury returned a verdict of $100,000. That after that, this same gentleman was seen among a jury panel; that he made no excuses to be relieved from jury service and stated that the only way he could repay the citizens of his community was by serving on a jury."

The importance of those points is unimpressive. To us they seem trivial. While all the remarks of the Judge are not in the record we feel sure that the court was trying to dissuade the jurors from offering excuses from jury duty and thus have available for litigants a jury panel of sufficient number to avoid the necessity of using "pick up" jurors.

In our opinion the entire record in this case does not reflect that there is any probability that the above matters resulted in any prejudice to appellant. These points are overruled. Rule 434, T.R.C.P.

The seventh point relates to the admission in evidence of certain photographs of appellant's truck and certain testimony of the witness Joe Meserole.

Appellant's objection to the admission of the photographs was that they were taken after the collision and after signal lights had been installed and that they plainly showed this subsequent improvement. This objection was overruled. Similar objection was made to similar testimony of Mr. Meserole but the record does not show that the court acted on this objection.

■ The general rule is that evidence showing repairs or improvements or that additional precautions were taken subsequent to an accident are not admissible to show prior negligence. S. Blickman, Inc. v. Chilton, Tex.Civ.App., 114 S.W.2d 646 (Austin); McCormick and Ray, Texas Law of Evidence, Sec. 503, p. 647.

■ One ground of negligence alleged by appellees was that the truck involved was not equipped with electric signal lights. This issue was submitted to the jury and found in favor of appellant. Since the above evidence bore solely on this issue it did not affect the jury verdict adversely to appellant and hence did not affect the judgment. Reversible error is not shown by this point. Rule 434, supra.

■ The eighth point is directed towards the admission in evidence of three photographs over appellant's objection that they were highly inflammatory and prejudicial.

One of such photographs has been inserted above. A second photograph shows only a portion of the street; showing certain marks but not showing any car, person or other foreign object. The third picture is the same as the one reproduced above but is taken from behind the truck and at a far greater distance.

These pictures were taken by the Austin Police Department shortly after the collision and they, together with others so taken and not admitted in evidence, were the only pictures available to show the scene at the time.

Appellant does not contend that the verdict of the jury is excessive.

Under these circumstances no error is shown.

It is no objection that the pictures were gruesome or inflammatory. The question is whether they were material and otherwise admissible. Obviously those pictures were material on numerous issues of negligence raised by the pleadings. It is not contended that there were any technical objections to the admission of the pictures. It may be regrettable that the pictures do not reveal a pretty sight but this did not affect their materiality or admissibility. See Texas Employers' Ins. Ass'n v. Crow, 148 Tex. 113, 221 S.W.2d 235, 10 A.L.R.2d 913.

■ Appellant's ninth point asserts error in the failure of the trial court to grant a mistrial because of this occurrence:

"Counsel for Appellees on cross-examination interrogated Appellant's witness, Donald H. Groft, as to the seat of the truck involved in the collision in question. During the course of such cross-examination, counsel for Appellees turned to counsel for Appellant, in the presence of the Court and the jury, and said:

" 'Q. If you can be—we request a stipulation with counsel, if you are willing that we send representatives of the Plaintiff and Defendant down there to get—pick up that seat part and bring it down. Let the jury examine it and test it.' "

Appellant relies upon the rule that it is reversible error for counsel to make an offer in open court to opposing counsel that the jury be permitted to view the premises or scene where the events involved in a lawsuit transpired.

As we understand the above rule it applies only to premises or property of such nature that it is impossible or inconvenient to produce the same in court. Woodrum Truck Lines v. Bailey, Tex.Com.App., 57 S.W.2d 92. There is no showing that the "seat part" was of this nature. In fact appellee says:

"It was not necessary for Plaintiffs to obtain an agreement or stipulation from the Appellant before such seat could be brought into Court and introduced in evidence."

This point is overruled.

Points ten, eleven and twelve complain of the action of the trial court in excluding from evidence a record kept by an employee of appellant, Joe Meserole, and complaint is also made that the instructions given the jury by the court regarding this record were comments on the weight and credibility of the employee witness who kept such record.

The record contained information regarding repairs made upon motor vehicles belonging to appellant and would tend to show that the truck involved in this collision was in a good state of repair at such time.

The record was originally received in evidence but was excluded on motion of appellees sustained by the court who then instructed the jury:

"Gentlemen of the Jury, in regard to defendant's Exhibit 17, which was being testified to by Mr. Meserole at the time you retired, or concerning which he was testifying, has been withdrawn and excluded from evidence in this Court by this Court, and I will instruct you at this time that you will not consider for any purpose in this case said exhibit or any testimony concerning its contents. Completely exclude from your consideration for any purposes in this case any of the testimony concerning the contents of the exhibit and the exhibit itself."

The motion to exclude was based on the failure of appellant to produce such record in accordance with a previous court order granting discovery under Rules 167 and 170, T.R.C.P.

It is not denied that the record was not produced under the discovery order. Appellant excuses this on two grounds (1) that the record was a private record of the employee and (2) that it did not know of the existence of the record before the trial.

The court order expressly directed appellant to produce repair records on the involved truck which were in possession of its employee, Joe Meserole. The record excluded was just such a record.

Sec. (b), Rule 170, T.R.C.P., authorizes a court to prohibit introduction in evidence of documents which are not produced as ordered. The trial judge exercised his discretion and punished appellant as he was empowered to do under this Rule and we find no abuse of discretion in such action.

Appellant nevertheless says that such record was admissible against its co-defendant, R. F. Bacon. Perhaps so, but since Mr. Bacon has recovered judgment and neither appellant nor appellees have appealed therefrom we will not further pursue the matter.

654

Neither are we able to detect any comment on the weight of the testimony or credibility of the witness, Meserole, in the instruction given the jury by the trial judge, copied above, in excluding the record of this witness.

 The fourteenth point is that the trial court erred in permitting appellees' counsel to ask appellant's witness questions such as "Q. You think it is more important to keep him from stooping than it is to save his life?" and "You can snap safety belts to save men the same as you can to save packages, can't you."

The first question was withdrawn and the second question was not answered. Appellant contends that by merely asking these questions reversible error has been committed. We do not agree.

The questions were asked on cross examination of appellant's expert witness, Mr. Donald H. Groft, who testified in his capacity as a body manufacturer and professional engineer, and they were pertinent to his testimony regarding the design of the truck involved and its safety.

Great latitude is allowed in cross examination concerning which the trial judges exercises sound discretion. In our opinion, the questions asked are not, in themselves, of such prejudicial nature as that they probably influenced the jury to return an improper verdict.

 In its fifteenth point appellant complains that the court erred in refusing to admit in evidence that portion of its "Rules Governing Operations of Motor Vehicles" which prescribed the procedure to be followed in maintaining its trucks and making repairs thereon.

These rules were excluded on the ground that they were relevant only to the issue of contributory negligence on the part of deceased, which defense was not available to appellant under Article 8306, Sec. 1, V. A.C.S.

Appellant was not convicted of negligence in the maintenance of its trucks; only in its design. The error, if any, in not admitting these rules was harmless. Rule 434, supra.

 The sixteenth and last point is:

"The error of the Court in granting Defendant Bacon's Motion for Instructed Verdict on its own initiative after having prior thereto overruled the same when such action was egregiously erroneous under the pleadings and the evidence, and when such action was calculated to leave the distinct and indelible impression on the minds of the jurors that, in the opinion of the Court, Bacon was guilty of no act of negligence proximately causing the collision, but that the entire responsibility therefor, if any, must be borne by Appellant."

This point is overruled. The court did not inform the jury that Bacon had been exonerated. While Bacon's motion for an instructed verdict was granted, the jury was not actually so instructed. From all the jury knew it could have as well, and perhaps better, concluded that Bacon was liable as a matter of law rather than that he was not liable.

The judgment of the trial court is affirmed.

Affirmed.