Arthur A. BRADSHAW, Appellant,

v.

M. T. WHITE, d/b/a Southwest Car Auction, Appellee.

No. 10407.

Court of Civil Appeals of Texas.

Austin.

June 13, 1956.

On Motion for Rehearing Oct. 10, 1956.

Further Rehearing Denied Oct. 31, 1956.

Smith & Lear, San Angelo, for appellant.

O'Neal Dendy, San Angelo, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment, based on a jury verdict favorable to appellee, for $612.50, $250 as attorney's fee and for $36 storage on the autombile, the subject to this litigation.

The suit was instituted by appellee, White, against appellant, Bradshaw, to recover $612.50, the amount of a draft given by Bradshaw for an automobile, purchased at appellee's auction ring, which was not honored upon presentation, for attorney's fees and for storage of the car.

Appellant defended on the ground that the automobile was misrepresented as to its mechanical condition with named faults and alleged some defect in the title papers.

The appeal is founded on fifteen assignments and are to the effect that the court erred in holding that good title to the automobile was furnished by appellee, because there was no showing that it had been registered in this State, and no notation was made as to any liens, nor were the blanks filled out; that the application for certificate of title was never filed with the Tax Collector, nor proper fees paid, and tender of title was more than 10 days after the automobile was sold as provided by the contract of sale, and in holding that the appellee was entitled to damages.

The automobile was sold to appellant and a draft for $612.50 was issued on September 28, 1954 and on October 8, 1954 appellant returned the car and stopped payment on the draft and the suit was instituted.

The rules of the auction provided that no car would be guaranteed against anything after it left the premises, and provided that only licensed dealers might buy. Further provision for the buyer's information was:

"All automobiles are guaranteed against bad transmissions, bad rear ends, bad batteries, cracked or welded blocks, taxi cabs and police cars, unless otherwise announced, but the automobile must be rejected for the above reasons before leaving these premises. The auction guarantees all titles to automobiles purchased at this auction and title will be sent to the buyer immediately upon receipt of title by auction."

This sign was posted in front of the auction block.

The contract of sale is as follows:

"Purchaser agrees that he will not remove the automobile from the premises of the Auction Company, until he has examined same for all causes for which it may be rejected, and that he will reject the automobile only for mechanical reasons for which it is guaranteed, and that he will not reject said automobile for reasons of appearance or pertaining thereto.

"Consignor agrees that the last bidder on said automobile shall become the owner of same, whether or not the consignor is present, or whether or not he fails to protect same.

"Purchaser hereby accepts the above described automobile in its present condition, and if payment is made by check or draft represents that he has sufficient funds on deposit for the payment of said draft or check and that he will not stop payment of said check or draft for any reason and in consideration of the Southwest Car Auction accepting said check or draft agrees to pay attorney's fee and all costs in connection with the collection of same.

"Seller agrees that Auction Company may stop payment on any check or draft paid to him in the event there are any discrepancies made pertaining to the condition of said automobile.

·"Seller agrees that he will deliver good title, free of all liens and/or other encumbrances, within ten (10) days of · date automobile is sold."

Appellee White testified that on October 8,·1954 a boy brought the car back, with a note reading:

"Dear Sir,

"Your car has been returned to the Auction as the car was misrepresented to us and the draft was turned down.. · .

"Arthur A. Bradshaw."

and said that Bradshaw had turned the car down; left the car and went away, but that he, White, did not accept the car.

Mr. White testified that he paid the people who sent the· car to the auction $602.50; that the car was on the premises subject to payment of storage charge and that Mr. Bradshaw can get it any time.

The case was submitted on special issues, the first inquired if the automobile had been represented as being good from bumper to bumper, to which the jury answered "Yes."

In response to an issue asking if the front cross beam of the frame was broken, the jury answered "No."

The jury found that the factory serial number had not been changed on the motor block.

Attorney's fees in the sum of $250 were fixed by the jury, and storage on the automobile at $3 per month. The jury found that there was no difference in the market value of the automobile between the date it was sold and when returned.

The only reason given by appellant for declining to pay the draft was that the car had been misrepresented to him. No complaint was made as to the sufficiency of the title papers, or a change in the number on the motor block.

We believe that appellant having examined and driven the car for a short time before issuing his draft, and subsequently driving the car to San Angelo and keeping it for several days before complaining of· its bad condition and returning it, that he became bound and liable for the purchase price of the car.

Witness W. R. Anderson testified that appellant employed him to drive a car from San Angelo to Brownwood and that he left the car on the lot in Brownwood and told Mr. White that he was returning the car for Mr. Bradshaw, that Bradshaw had said that the frame had been broken and welded.

Appellant Bradshaw testified as to the sign "The Rules of this Auction" being posted and that every one's attention was directed to the rules and that he drove the car around and· then signed the contract and issued the draft and drove the car to San Angelo. That the draft came in an envelope containing the title papers and that the draft and papers were sent back on October 8, 1954.

Witnesses testified as to the condition of the car, some that the frame had been welded and others that the frame had not been broken or repaired but the jury found in favor of appellee on this disputed question and its findings are reasonably supported.

Appellant never demanded of appellee title papers, and on the hearing of the motion for a new trial, appellee tendered a complete record of and certificate of title.

Cornelius v. Harris, Tex.Civ.App., 163 S.W. 346, er. ref.

While the offer of attorney to have the jury view the car was improper we do not believe that it was so improper as to have resulted in harm to appellant as to require a reversal of·this case. The court instructed the jury not to consider the statement made by appellee's attorney.

The trial court overruled the motion for a new trial after a hearing at which testimony was heard, and we do not believe that there was an abuse of discretion.

The jury is presumed to have followed the court's instruction not to consider the remark.

Gillette Motor Transport Co. v. Whitfield, 145 Tex. 571, 200 S.W.2d 624, 625.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice.

■ We have concluded that appellant's motion for rehearing should be granted and this cause reversed and remanded for prejudicial error reflected by the following proceedings:

"Mr. Dendy: If the Court please, before the Court reads the charge, in view of the fact that there are matters in the Court's charge that can be settled definitely without any question, we suggest that we be permitted to allow the jury to personally look at the frame of the automobile and the number on the automobile to definitely establish an issue of fact.

"Mr. Smith: If the Court please, in connection with that statement before the jury we ask the Court to declare a mistrial as being improper and prejudicial, something, come along here a year after it happened, and not being proper in any respect, and we ask that that statement be, the jury be instructed not to consider it for any purpose, for all the reasons stated, and declare a mistrial.

"Court: I overrule your motion to declare a mistrial. I will instruct the jury to disregard and not consider the tender made.

"Mr. Smith: Notwithstanding, your Honor, your rulings, may we have our exception on the first instruction and this, notwithstanding the ruling.

"Court: Alright, you have your bill."

The evidence was conflicting on both issues referred to by counsel for appellee in his proposal to permit the jury to inspect the automobile. On the new trial hearing one juror testified:

"A. * * * There was several of them (jurors) made remarks about if they could view the automobile they could make up their minds better, but that was all that was said.

"Q. If they could view the automobile they could make up their minds better as to how to answer the issues? A. That one particular issue there where the question was asked, was the frame welded, or something, I don't recall just exactly, but that was the one where the remarks were made."

These remarks were made before the issue relating to the condition of the frame of the car had been answered and at a time when the jury was divided as to how it should be answered.

It has been held both before and since the adoption of the 1941 Rules of Civil Procedure that an offer such as was made by appellee constitutes reversible error: Woodrum Truck Lines v. Bailey, Tex.Com.App.1933, 57 S.W.2d 92; Crow v. Levine, Tex.Civ.App. Fort Worth, 1942, 165 S.W.2d 117, writ ref., w. o. m.; Airline Motor Coaches v. Campbell, Tex.Civ.App. Beaumont, 1944, 184 S.W.2d 532, writ ref., w. o. m. See also City of Denton v. Chastain, Tex.Civ.App. Fort Worth 1941, 156 S.W.2d 554; Railway Express Agency v. Spain, Tex.Civ.App. Austin, 1952, 249 S.W.2d 644; Id., 152 Tex. 198, 255 S.W.2d 509.

Our opinion in Abramson v. City of San Angelo, Tex.Civ.App., 210 S.W.2d 476, 480, writ dism. is not controlling here because there the jurors actually viewed the premises and saw "only what the undisputed evidence described." Obviously there was no "probable injury" by such unauthorized inspection.

Considering the entire record we are of the opinion that the error committed was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case.

Otherwise we concur in our original opinion.

Motion granted. Cause reversed and remanded.

ARCHER, C. J., dissenting.