Kenneth L. MUSGRAVE, Appellant,

v.

Busby CARROLL et ux., Appellees.

No. 3773.

Court of Civil Appeals of Texas.

Eastland.

Feb. 8, 1963.

Rehearing Denied March 1, 1963.

Smith & Erwin, Abilene, for appellant.

Eplen, Daniel, Hooper & Dickson, Abilene, for appellees.

WALTER, Justice.

Kenneth L. Musgrave contracted with Busby Carroll and wife to build them a house. The Carrolls filed suit against Musgrave and alleged that the defendant failed to substantially perform in that he failed to construct the house in a good and workmanlike manner and in accordance with the plans and specifications. The defendant pleaded that the major damages were caused by shifting soil.

The jury found that the defendant failed to complete the house in accordance with the plans and specifications; that the reasonable cash market value of the house would have been $20,000.00, if it had been so completed; that $14,000.00 was the reasonable cash market value of the house in its present condition; that the foundation had not shifted and that the defects in the house could not be remedied without impairing the building as a whole. Judgment was rendered for the plaintiff for $6,000.00. The defendant has appealed.

Appellant contends that the court erred in overruling his motion for a mistrial. The appellee, Busby Carroll, was asked on direct examination if appellant and his attorneys had been given an opportunity to visit his house since suit was filed. He answered that they had. He was then asked "And would you tell the jury whether or not they have had the opportunity to bring people to look at your house with them?" and he answered "They have brought people. They brought building contractors, and they brought people, concrete people and so on and so forth; and I permitted them to come in there and test any portion of it they wanted to, and I would like to extend at this time to the jury and Judge and all to come out and visit my property." Counsel for appellant asked for a mistrial which was denied. Counsel for appellant renewed his motion for a mistrial and the following proceedings occurred:

"MR. SMITH: I want to move now for a mistrial, because—because he of-

fered to let the jury go out and look at the house and look at the premises.

"THE COURT: I won't let them go.

"MR. SMITH: Sir?

"THE COURT: I won't let them go."

Appellant relies upon the case of Woodrum Truck Lines v. Bailey, 57 S.W.2d 92, (Tex.Com.App.), decided in 1933. Bailey had filed suit against Woodrum for damages alleged to have been sustained by him as a result of a collision. The jury found no negligence against Woodrum and that Bailey was not guilty of contributory negligence and that the collision was the result of an unavoidable accident. Judgment was rendered in favor of Woodrum. During the course of the trial defendant's counsel requested the court to permit the jury to go to the place of the accident and there view the surroundings. Plaintiff asked for a mistrial. The Court of Civil Appeals held "Since the action taken was reasonably calculated to prejudice the right of plaintiff, such an injury will be presumed, in the absence of any showing in the record that it did not operate to plaintiff's harm." Bailey v. Woodrum Truck Lines, Tex.Civ.App., 36 S.W.2d 1090. The Commission of Appeals affirmed the judgment of the Court of Civil Appeals.

The court applied the doctrine of "presumed injury" in the Woodrum case. We recognize that Woodrum v. Bailey stands for the proposition that it is error for counsel to invite the jury to visit the scene of the accident, but the rule of "presumed injury" has not prevailed in Texas since the adoption of Rule 434 of the Texas Rules of Civil Procedure. The Development of the Doctrine of Harmless Error in Texas, 31 Texas Law Review, Page 1; Walker v. Texas Employers Insurance Ass'n., 155 Tex. 617, 291 S.W.2d 298. The burden is upon the appellant to show that the error complained of "was reasonably calculated to cause, and probably did cause the rendi-

tion of an improper judgment in the case", before the appellate court is justified in reversing the judgment. City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860. The appellant did not make a motion that the court instruct the jury not to consider the voluntary statement of the witness. The court, however, intervened and said "I won't let them go." This statement was repeated by the court when appellant's counsel apparently did not understand him. The court of its own motion intervened and assumed the responsibility of refusing to let the jury visit Carroll's property. Airline Motor Coaches, Inc. v. Fields, Tex.Civ.App., 159 S.W.2d 187; American National Insurance Company v. Hammond, Tex.Civ.App., 91 S.W.2d 432. Considering the entire record, we are not convinced that the unresponsive statement of the witness was reasonably calculated to cause, and probably did cause the rendition of an improper verdict.

Appellant contends the court erred in submitting special issue number 3. Special issues numbers 2 and 3 and the jury's answers thereto are as follows:

"SPECIAL ISSUE NO. 2—What do you find from a preponderance of the evidence to be the reasonable cash market value of the house, if such house had been constructed according to the plans and specifications?

"ANSWER: $20,000.00.

"SPECIAL ISSUE NO. 3—What do you find from a preponderance of the evidence to be the reasonable cash market value of the Carroll house in its present condition? Answer in dollars and cents.

"ANSWER: $14,000.00."

Appellant made no objection to special issue number 2. His objection to special issue number 3 was that "Said issue calls for the value of the house in its present condition instead of calling for the value of the house *at the time it was actually finished* and before it had been lived in for a year and a half by the plaintiffs."

The appellant contends in his brief that "—the court should have taken into consideration in the charge to the jury the nineteen (19) months of occupancy, the depreciation, plus the acts of the Appellees which deliberately permitted further damage and waste to occur. This the trial court refused to do." The appellees contend that the appellant did not object to the issue on the ground that it failed to include depreciation and that appellees deliberately permitted waste and damage. Rule 274 of Texas Rules of Civil Procedure requires a party to distinctly point out the matter to which he objects and the grounds of his objection. Appellees' contention is well taken. On appeal a party is confined to the objections made in the trial court to the court's charge. Traders & General Insurance Company v. Davis, Tex.Civ.App., 209 S.W.2d 963.

Appellant pleaded "That thereafter the damages or major damages, herein complained of occurred due to the fact that soil in Radford Hills is shifting soil and that the shifting of the foundation caused the major trouble; that the Defendant, having completed the house as aforesaid, is not liable to Plaintiffs because of any damages resulting from the shifting of the foundation of said house." The jury found against him on this issue.

The appellee Busby Carroll testified to approximately twenty defects he found in his house such as the wall between the hallway and the living room being completely raised from the foundation; the tile in the bathroom being broken loose; in one bedroom the foundation has pulled away from the wall; the paneling in the hall has slipped; there is a crack in the fireplace; the sink tile in the kitchen is loose; the tile has fallen off the edges of the bar; there is a crack in the living room from the ceiling to the floor. He further testified about cracks in the foundation and cracks in the brick on the outside of his house. After

testifying about all these defects he was then asked, "Now, Mr. Carroll, these facts you testified to, the condition of your house you testified to, as evidenced by the pictures we have seen, when did this condition start taking place?" and he answered "They started before Christmas. In other words, we moved in—I am not sure. Somewhere around December 11, 12, 13, or 14, somewhere in that neighborhood," and then he was asked "Now, this is 1960, I believe?" and he answered "I am talking about 1960 after we moved in." He further testified that when he moved into the house there were some items called for in the plans and specifications that had not been finished, namely, the moulding around the den had not been painted, tile in the den had not been finished and the shutters on the front windows had not been installed.

Appellant testified that the loan on the house was closed in December, 1960, and that the defects in the house began to develop six or seven months later. He was permitted to testify that none of the damage to the house was due to his "fault in building the house." He was then asked "How would you remedy the situation as you now find it?" and he answered "Well, from the looks of the pictures and all there, it appears that the outside beams have raised, leaving the center of the foundation in exactly the same position that it was in, pulling the plate from the floor, the slab. The only way I would know you could fix it would be to go in there and put a hard oak shim under each one of your studs, which is every sixteen inches. Of course, you would have to take your base off first. And you would have to grout it with cement grout and put your base back down. You would have to cut out where all your cracks are, and remud and tape and paint. You would have to reset your doors. Take your doors out and rehang them. There is one crack in the living room that looks mighty bad. You might have to put a whole new piece of sheet rock there. The brick on the outside, it looks like there is two places where it is cracked. You would need to replace some brick there. And you could ask twenty builders how to do it, and you would get twenty different answers." He further testified that after repairing the building in this manner it would be in good shape; that it would remain that way unless there was another shifting or movement in the soil.

A cement contractor testified he had examined the Carroll house and found that the floor seemed to be settling in the center of the house. He said if the sand which is placed under the slab is not thoroughly tamped and wet, the cement will eventually settle. When asked "And by your examination, have you formed an opinion as to the condition of that sand underneath the contract—underneath the concrete?" he answered "Well, they had some type of sand, it didn't appear—it was a type of a red sand; but it didn't seem to be—seem like might be some soil in that sand." He further testified as follows: The reason for tamping the sand is to prevent the sand from settling. When it settles the concrete slab will go down with it. In his opinion the sand was not thoroughly tamped. He examined some of the core holes that had been drilled in the slab. He examined the one that was in a cross beam and found it to be 8 inches. The plans and specifications called for it to be 16 inches minimum. He measured another core hole in the hall and found it to be about $2\frac{1}{2}$ inches. The plans and specifications called for it to be 4 inches.

A real estate appraiser testified he had examined the Carroll house and found it badly damaged because the foundation had given away. He found the slab in the middle of the living room floor was $1\frac{3}{4}$ inches below level and that certain parts of the foundation were not up to specifications. He stated that in his opinion this condition was occasioned by a poorly poured foundation.

In Hutson v. Chambless, 157 Tex. 193, 300 S.W.2d 943, the court was considering the question of a proper rule for measuring the damages for breach of a contract to con-

struct a house and the court said: "To summarize, we hold that the trial court's judgment was based upon an incorrect measure of damages; that the true measure of damages is the difference in value between the building as it stood at the time of the trial, with allowance for Chambless' failure, if any, to paint the doors and woodwork, and its value had it been constructed according to the contract; that the special issues submitting that measure of damages were improperly framed; and that the error in the manner of submitting them necessitates a reversal of the case." The court submitted special issue number 3 in compliance with the rule announced in Hutson v. Chambless, 157 Tex. 193, 300 S.W.2d 943. Appellant contends that what the court said about the correct measure of damages in that case was dicta. He contends that special issue number 3 should have been submitted under the rule announced in Totten v. Houghton, Tex.Civ.App., 2 S.W.2d 530 (no writ history). The rule there stated is as follows: " * * * and, where the defects cannot be remedied without impairing the building, then the measure of damages is the difference between the value of the building as constructed and as such value would have been if constructed according to the plans and specifications."

It will be noted that in the Totten case the court used the words "as constructed". Appellant did not ask that this issue be submitted as set forth in the Totten case but in the place of the words "as constructed" he used the words "actually finished". Carroll's testimony was, in effect, that the house had never been actually finished and that the appellant informed him in February he was going to wash his hands of the whole deal. If the measure of damages as set forth in the Hutson case is dicta, we have, nevertheless, concluded that the appellant's objection to special issue number 3 is without merit because if the issue had been submitted as suggested by appellant it would have assumed a disputed issue of fact, namely, that the house had actually been finished. 41–B Texas Jur., Trial, Civil Cases, Sec. 483, page 638, and cases there cited. Also, in view of the testimony of Busby Carroll that the defects in the house occurred soon after he moved in, we are not convinced that the appellant has shown from the record and the charge as a whole that the manner in which the court submitted special issue number 3 was reasonably calculated to cause and probably did cause the rendition of an improper verdict.

We have considered all the evidence and find that the verdict of the jury and the judgment of the court are not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.