The STATE of Texas, Appellant,

v.

V. E. BERRY et ux., Appellees.

No. 14359.

Court of Civil Appeals of Texas.

San Antonio.

July 21, 1965.

Waggoner Carr, Atty. Gen., T. B. Wright, Watson C. Arnold, Carroll R. Graham, Asst. Attys. Gen., Austin, for appellants.

Park Street, James K. Gardner, Patrick J. Pape, San Antonio, for appellees.

MURRAY, Chief Justice.

The State of Texas as condemnor brought this suit against V. E. Berry and wife, Lydia J. Berry, of San Antonio, Bexar County, to condemn the fee simple title, save and except the oil, gas, sulphur and other minerals, to approximately 5.4968 acres of land abutting upon Highway 90 East, now known as Interstate Highway 10. The subject property is located about 4.5 miles east of the Bexar County Courthouse; it fronts about 695 feet on Highway 90, and is about 320 feet deep on Green Valley Drive, the westerly boundary, and about 337 feet deep on the easterly side. The most easterly point of the property is approximately 626 feet from the intersection of Highway 90 East and Loop 13. Highway 90, now known as Interstate Highway 10, has been broadened and much of it has been built upon the subject property, so that at the present time the situation has been greatly changed, and it was in this condition at the time of the trial. In this case it was the taking of an entire tract and there was no issue of damages to any remainder.

The defendants admitted that plaintiff had the right to condemn the property, and that all prerequisites had been complied with, thus the only question to be decided was the market value of the subject property at the time it was taken on September 13, 1962.

The jury found that the market value of the property was the sum of $178,545.00, the highest value testified to by any witness, and judgment was rendered accordingly; from which judgment the State of Texas has prosecuted this appeal.

After the jury had been impaneled but before any evidence had been introduced,

Mr. Park Street, leading counsel for the condemnees, proposed in open court and in the presence of the jury that the jury be sent, in charge of the court bailiff, to view the subject property, which request was not allowed by the trial court. The condemnor alleged that this was misconduct and moved for a mistrial, which was overruled by the court. It is contended that the overruling of this motion constituted reversible error.

The record shows that the following occurred in the presence of the jury, to-wit:

"MR. STREET: If the State wouldn't object, we understand that it is permissible—if there is no objection—the owners would like to have the jury view the property with the very fine bailiff of the Court. We understand if there is no objection on either side it is permissible, and we—It would be our hope the Jury could view this property.

THE COURT: Let's take that matter up out of the presence of the Jury. Right now we will excuse the Jury, and we will get into that later.

MR. STREET: Yes, sir.

(Whereupon the jury left the courtroom.)"

The State then made the following motion for a mistrial, to-wit:

"Comes now Plaintiff, State of Texas, and after the Jury has been impaneled and sworn, and before the introduction of any evidence and moves the Court to declare a mistrial and secure another Jury panel for the following reasons:

The attorney for the landowner, in open Court and in the presence of the Jury arose, stated to the Court that, 'Unless it was objectionable by the State he desired that the Jury view the subject property,' and he further stated that the law was if there was no objection by the State it was proper for the Jury to view the subject property. In this particular case, as attorney for the landowner well knows, * * * possession of the subject property has already been taken, and the subject property is in fact under a portion of the new highway or a portion of the north service road thereof. Therefore, it would be impossible to view the subject property as it existed on or about September 13, 1962, the date of taking. The offer made by the landowner's attorney was made solely for the purpose of embarrassing the State and solely for the purpose of creating prejudice * * * in the minds of the Jury against the State, and leads the Jury to believe that the State, and the State only, is prohibiting them from seeing the subject property as it existed on the date of taking, and on the date of which they are to evaluate same. Such would tend to make the Jury believe that the State desires to hide from the Jury the condition of the property as of the date of taking, and would lead the Jury to believe the State is attempting to hide evidence from them and would, therefore, necessarily create prejudice against the State in the minds of the Jury.

Wherefore, premises considered, Plaintiff prays the Court declare a mistrial and secure another Jury panel from which a Jury may be selected in this case. Respectfully submitted."

Thereafter, on the next morning, the following proceedings were had in the presence of the jury:

"MR. STREET: At this time the Defendants would like to withdraw the request that was made of the Court just before the Court adjourned for the evening yesterday.

The COURT: Alright.

MR. STREET: And we would appreciate it if the Court would instruct the Jury.

THE COURT: Gentlemen of the Jury, the Court instructs you that the only evidence to be received in this case will be received from the witness chair. That is the law, and we will have to go by the rules of evidence. Let's proceed."

It was stipulated that a portion of the service road of Interstate Highway 10 had been constructed and now exists upon the subject property, thus it is apparent that the condemnees knew at the time the jury view was proposed that the subject property was not in its original form but had been changed by construction thereon of Interstate Highway 10. It appears that the trial judge spoke up in time to save the condemnor the embarrassment of having to object to the proposed jury view, but the trial judge did not take upon himself the full responsibility of denying the jury the privilege of viewing the property, he merely stated that the matter would be taken up out of the presence of the jury. When, in the presence of the jury the next morning, he granted the request of appellees to withdraw their request for a jury view, and instructed the jury as above stated, it could very well have created in the minds of the jury the impression that the matter had been taken up out of the presence of the jury, that appellant had refused to give its consent to a jury view, therefore, the only evidence the jury would receive would be from the witness chair. The judge expressed in no way that he disapproved of Mr. Street's conduct, but rather seemed to regret that they would be compelled to follow the rules of evidence. It appears to us that appellant was placed in a rather embarrassing position. The jury could very easily have concluded, but for the failure of the appellant to agree, the jury would have been permitted to view the property, and that the appellant was concealing from them material evidence. All of this was calculated, at the very start of the trial, to incur good favor for appellees with the jury and bad favor for appellant.

It is admitted by appellees that it was improper for Mr. Street to have made the proposal of a jury view in the first place. There are many decisions in this State so holding. Woodrum Truck Lines v. Bailey, 57 S.W.2d 92 (Tex.Com.App. 1933); Bradshaw v. White, Tex.Civ.App., 294 S.W.2d 736; Airline Motor Coaches, Inc. v. Campbell, Tex.Civ.App., 184 S.W.2d 532.

In Woodrum Truck Lines v. Bailey, Judge Joe Ryan, speaking for Section B, Commission of Appeals, said:

"In this state, however, since the Act of May 13, 1846 (2 Gammel's Laws, p. 1669), under section 107 thereof (carried into the Rev.Stat.1925 as art. 2175), reading 'all vouchers, views, essoins, and also trials by wager of battle and wager of law are repealed,' all laws authorizing a trial by view were repealed, and we have no such practice. Galveston, H. & W. Ry. Co. v. Waples et al., 3 Willson, Civ.Cas. Ct.App. page 484, § 410. As said by Chief Justice Roberts in Smith v. State, 42 Tex. 444: 'There is thus no authority found in this State for such a mode of enlightening * * * the jury as to the material facts of a case which they have to try.' In Austin & N. W. R. Co. v. Cluck, 97 Tex. [172] 181, 77 S.W. 403, 64 L.R.A. 494, 104 Am.St.Rep. 863, 1 Ann.Cas. 261, Judge Brown calls attention to such repeal of the right of view under the common law.

"In Lovett v. State, 87 Tex.Cr.R. 548, 223 S.W. 210, it appeared that the jury, pending the trial, were permitted to visit the scene of a homicide and view the ground, its location and environments. In reversing a judgment of conviction Judge Davidson said that this character of conduct is not legally justifiable. To the same effect see Southern Traction Co. v. Wilson (Tex.Com.App.) 254 S.W. 1104; Hovey v. Sanders (Tex.Civ.App.) 174 S.W. 1025; Ft. Worth Imp. Dist. v. Weath-

erred (Tex.Civ.App.) 149 S.W. 550; Texas Mid. R. R. v. Brown (Tex.Com. App.) 228 S.W. 915; Letsinger v. Panhandle & S. F. R. Co. (Tex.Civ. App.) 286 S.W. 1107; Southern Traction Co. v. Wilson (Tex.Com.App.) 254 S.W. 1104.

"As correctly said by the Court of Civil Appeals: 'Manifestly, it would have been error for the court to grant the request of defendant's counsel to have the jury go out and view the place of the accident with its surroundings.' "

In Bradshaw v. White, supra, the Court said:

"It has been held both before and since the adoption of the 1941 Rules of Civil Procedure that an offer such as was made by appellee constitutes reversible error: Woodrum Truck Lines v. Bailey, Tex.Com.App. 1933, 57 S.W.2d 92; Crow v. Levine, Tex. Civ.App. Fort Worth, 1942, 165 S.W.2d 117, writ ref., w. o. m.; Airline Motor Coaches v. Campbell, Tex.Civ.App. Beaumont, 1944, 184 S.W.2d 532, writ ref., w. o. m. See also City of Denton v. Chastain, Tex.Civ.App. Fort Worth 1941, 156 S.W.2d 554; Railway Express Agency v. Spain, Tex.Civ.App. Austin, 1952, 249 S.W.2d 644; Id., 152 Tex. 198, 255 S.W.2d 509."

Appellees cite the cases of Musgrave v. Carrol, Tex.Civ.App., 364 S.W.2d 868; Airline Motor Coaches, Inc. v. Fields, Tex. Civ.App., 159 S.W.2d 187; American Nat. Ins. Co. v. Hammond, Tex.Civ.App., 91 S.W.2d 432, but we do not regard them as controlling here. In those cases, when the proposal for a jury view of the premises was made, the trial court spoke up at once, accepted the full responsibility for denying such proposal, and did not leave the opposing counsel in the position of having objected to the jury viewing the premises involved.

■ Appellees contend that the judgment should not be reversed and the cause remanded, in view of the provisions of Rule 434, Texas Rules of Civil Procedure, unless we can say from the entire record that the conduct of Mr. Street in proposing the jury view was of such a prejudicial nature as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. We conclude that this improper conduct of Mr. Street in requesting a jury view was of such a prejudicial nature as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

There were a number of expert witnesses who testified to the market value of the subject property, and they placed the value all the way from $74,500.00 to $178,450.00. The jury found the fair market value to be $178,450.00, the highest amount testified to by any witness. This was more than three out of four of appellees' expert witnesses had testified to be the market value of the property. It was $28,450.00 more than testified to by Bert Fry; $28,758.00 more than the value given by G. J. Lucchese, and $10,950.00 more than was given by the expert Lewis Lipscomb; and when you come to the testimony of the experts placed on the witness stand by appellant, we find it was $102,700.00 more than the expert George A. French; $103,600.00 more than Willis A. Porter, and $99,950.00 more than the expert Nelson Cory.

There is no explanation for the jury's conduct in accepting the highest figure given by all of the witnesses as their verdict, other than that they were prejudiced against the State.

In view of the fact that this case must be remanded for a new trial, there is no reason for discussing the other points raised by appellant, as these matters probably will not arise upon another trial, at least not in the same manner and under the same circumstances.

For the error pointed out, judgment of the trial court will be reversed and the cause remanded for a new trial.

CADENA, J., not participating.