## TOTTEN v. HOUGHTON. (No. 367.)

Court of Civil Appeals of Texas. Eastland.
Nov. 25, 1927.

Rehearing Denied Jan. 27, 1928.

1. Pleading ☞18—Petition seeking damages for breach of building contract held demurrable for indefiniteness of specifications as to foundation.

In action for breach of building contract, petition alleging specifications that part of interior of foundation should be 24-inch square footing, 12 inches under surface of ground, with 6x6 block to sill, which piers should not be less than 7 feet apart in any direction, *held* subject to special demurrer for indefiniteness.

2. Pleading ☞18—Petition seeking damages for breach of building contract, alleging interior sills were to be of certain material, especially where partition walls longer than 12 feet should rest, held demurrable for indefiniteness.

Petition seeking damages for breach of building contract, setting out specification that all interior sills were to be 6x6 No. 1 pine, especially where partition walls longer than 12 feet should rest, in absence of allegation showing where such partition walls longer than 12 feet were located, was subject to special demurrer for indefiniteness.

3. Pleading ☞18—Petition seeking damages for breach of building contract, alleging all lower floor joists were to be braced with 4x4's set in concrete footing, held demurrable, as indefinite.

In action for breach of building contract, petition alleging specification that all lower floor joists were to be braced with 4x4's set in concrete footing, in absence of further allegation in respect thereto, was subject to special demurrer for indefiniteness.

4. Contracts ☞333(5)—Where contract and specifications pertaining to building were ambiguous, plaintiff, to recover for breach, must explain by appropriate averments meaning of such ambiguous expressions.

In action for breach of building contract, where contract and specifications pertaining to foundation of building were ambiguous, it was incumbent on plaintiff in pleading to explain by appropriate averments the meaning of such ambiguous expression which should have been pleaded with such particularity as to inform defendant of all of his defaults, either in omissions or defective performances for which damages were sought, and pleadings should have shown such resulting damages to flow naturally and proximately from the breaches alleged.

5. Pleading ☞8(7)—Allegation that contractor and agents represented work had been done according to plans and specifications, standing alone, would be objectionable, as conclusion.

In action on building contract, allegation in petition that contractor and agents to induce payment under contract represented to plaintiff that work had been done according to plans and specifications, standing alone, would be objectionable, as conclusion of pleader.

6. Damages ☞123—Measure of damages for breach of building contract, where defects can be remedied without impairing building as whole, is reasonable cost of remedying defects.

Where defects can be remedied without impairing building as whole, measure of damages for breach of building contract is reasonable cost of remedying defects.

7. Damages ☞123—Measure of damages for breach of building contract, where remedying defects would impair building, is difference between building's value and value if it had been constructed according to contract.

Measure of damages for breach of building contract, where defects cannot be remedied without impairing building, is difference between value of building as constructed and such value as it would have had if constructed according to plans and specifications.

8. Damages ☞123—Owner damaged by breach of building contract may recover reasonable cost of temporary repairs made in good faith.

Owner damaged by breach of building contract may recover cost of temporary repairs imposed on him by breach, if they are natural consequences of breach, reasonable in amount, and in good faith designed to diminish developing and impending injuries or damage.

9. Damages ☞123—On breach of building contract, owner may recover cost of placing necessary temporary supports under foundation and damages under general rule.

If breach of building contract requires owner in good faith to install temporary supports under building's foundation to arrest careening of walls or sagging of floors until repairs permanent in nature and of character called for in broken building contract can be made, he may recover therefor against contractor, in addition to recovery for permanent repairs under general rule, as against objection that recovery of double damages is permitted.

10. Trial ☞352(5)—Submitting issue whether contractor constructed foundation according to plans and specifications held erroneous as submitting several issues in one question (Rev. St. 1925, art. 2189).

Under Rev. St. 1925, art. 2189, requiring each issue to be submitted distinctly and separately, in action for breach of building contract where defendant entered general denial and several issues were involved, submitting to jury special issue whether defendant contractor constructed foundation according to plans and specifications in contract was erroneous, as submitting several distinct issues in one question.

11. Trial ☞350(4)—Submitting to jury issue as to reasonable cost of remedying defects to make building conform to contract held erroneous, as submitting law question.

In action for breach of building contract submitting to jury special issue as to reasonable cost of remedying defects or omissions in building so as to make it conform to contract and specifications was erroneous, as submitting

question of law as to construction of contract and what it would take to make building conform thereto.

**12. Trial ☞350(4)—Submitting special issues to jury without construction of plans and specifications and contract by court held error.**

In action for breach of building contract, submitting special issues to jury without construction of plans, specifications, and contract by court *held* erroneous; they being mixed questions of law and fact.

**13. Trial ☞352(1)—Issue submitted to jury as to whether owner, before paying building contractor, knew how foundation was constructed held, not erroneous, as on weight of evidence, in view of another instruction.**

In owner's action against contractor for breach of building contract, special issue, submitted to jury as to whether plaintiff, before payment, had knowledge of how foundation was constructed, was not erroneous, as being on weight of evidence.

**14. Appeal and error ☞1062(1)—Submission of issue held not prejudicial to defendant, because omitting element submitted as part of court's main charge, and answered by jury favorable to plaintiff.**

In action for breach of building contract, submission of issue whether plaintiff at any time before payment for building had knowledge of manner in which foundation was constructed *held* not prejudicial in omitting proposition that defendant would not be liable for alleged defects, if plaintiff had knowledge thereof, or could have discovered same by ordinary care, where same issue practically in form suggested by defendant was submitted as part of court's main charge and answered in the negative.

**15. Contracts ☞337(1)—Petition alleging defendant failed to install bookcases in house according to contract and specifications held insufficient on special exception.**

In action against building contractor for breach of contract, petition alleging defendant's failure and refusal to install bookcases according to plans and specifications and agreement of parties, and that reasonable cost of installing them according to contract and specifications was certain amount, *held* insufficient on special exception.

**16. Trial ☞350(4)—Submitting issue based on provision of contract incapable of performance held error.**

Building contract calling for construction of six bookcases 4 feet wide between two windows separated by space of 18 inches being indefinite and impossible of performance, submission of issue, in owner's action against contractor, of reasonable cost of installing bookcases according to plans and specifications, *held* error.

**17. Customs and usages ☞17—Where contract as to construction of central rows of concrete foundation was clear, evidence of custom to cut foundation beams to install plumbing held inadmissible.**

Where provisions of building contract relating to construction of two central rows of concrete foundation were clear, in action for damages by owner for breach of contract partly based on contractor's action in cutting opening in such rows to install plumbing, evidence that it was customary in construction of such character of houses to cut foundation beams to install plumbing was inadmissible.

**18. Customs and usages ☞17—Prevailing custom may become part of contract, but does not excuse violation of plain and specific provision of contract.**

Prevailing custom may, under proper pleading and proof, enter into and be shown as integral part of contract, but custom cannot excuse violation of plain and specific provision of contract sanctioned by law and public policy.

**19. Customs and usages ☞17—Custom may not destroy, contradict, or modify what is otherwise manifest.**

In consideration of contracts, custom may not destroy, contradict, or modify what is otherwise manifest.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Suit by O. R. Houghton against M. Totten for breach of contract. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Kirby, King & ·Overshiner, of Abilene, for appellant.

Davidson & Hickman, of Abilene, for appellee.

LESLIE, J. The appellee, O. R. Houghton, plaintiff below, instituted this suit against M. Totten, appellant, defendant below, alleging that he and the appellant entered into a certain building contract in writing wherein the appellant agreed to furnish all labor and material, including the foundation, and build a certain apartment house for the appellee, according to certain plans and specifications, a portion of the specifications being set out in the plaintiff's petition, a breach of which was alleged, to the plaintiff's damage in the sum of $4,500, alleged to be the reasonable cost of installing and completing the work, according to the contract and specifications, and repairing the injury done to said building on account of the failure of the defendant to install and construct the foundation according to specifications; and the plaintiff further alleged the sum of $625.10 damages as a cost of temporary repairs made by the plaintiff to said building. A further claim for damages in the sum of $135 was based upon the alleged failure to install six bookcases called for by the plans and specifications; the aggregate damages alleged being $5,350.10. The defendant answered by general demurrer and special exception; general denial and special pleas. The general demurrer and special exceptions were overruled and exceptions taken. The trial was before ·the

court and jury. The case was submitted on special issues and on the answers made by the jury the court rendered judgment for the plaintiff in the sum of $2,428.62. A motion for a new trial was overruled and this appeal perfected.

$1,995.70 was found to be the reasonable cost of remedying the defects and omissions in the foundation in such a way as to make the same conform to the requirements of the contract and specifications. $347.92 was found to be the reasonable and necessary expense for temporary repairs to prevent injury to the building. $85 was found to be the reasonable cost of installing six bookcases according to the requirements of the plans and specifications. These three items make up the sum total of the jury's verdict.

There are 27 propositions briefed by appellant and they are based upon 35 assignments of error. Appellant by his first proposition contends that, where the appellee alleges that the appellant entered with him into a contract containing the specification, "All interior sills shall be 6x6 No. 1 pine, especially where partition walls longer than 12 feet shall rest, all lower floor joists to be braced with 4x4 set on concrete footing," there being no allegation showing where said 6x6 sills or 4x4 braces were to be set and no reference or allegation that the location thereof was shown by the plans of the building, said specifications were void for uncertainty and appellant's special exception to said allegation should have been sustained.

An analysis of the appellee's pleading in the light of the specifications pertaining to the foundation of the building, as both are hereinafter set out, leads us to the conclusion that we would not be justified in sustaining appellant's first proposition, and it is overruled. This appeal may be more properly disposed of under succeeding assignments, about which we think there can be no doubt.

[1-3] By his second proposition appellant contends that the specification, "All interior sills shall be 6x6 No. 1 pine, especially where partition walls longer than 12 feet shall rest, all lower floor joists to be braced with 4x4 set on concrete footing," is ambiguous on its face and without explanatory averments does not constitute a contract for breach of which plaintiff could recover damages, and in that connection by a third proposition the appellant contends also that the allegation that the defendant (appellant) "placed said partition walls, which were plaster, on the subfloors of said building without support thereunder, as required by said specifications, and which support was necessary to keep said walls from sagging," is insufficient where suit is based on a written contract and no provision of said contract is pleaded inhibiting such action. The action of the court in overruling the special demurrers urged in each instance

above is assigned as error. The propositions will be considered together.

The plaintiff alleged in his petition that the defendant agreed to construct the building according to the following specifications:

"Foundation.—Foundation shall be of solid concrete. There shall be 2 rows through the center of the building 20 inches wide and 12 inches deep, 16 inches above the surface reinforced as follows: 6 bars of one-half inch steel for the lower section and 4 bars of one-half inch steel for the upper section of said foundation. All the balance of the interior of said foundation shall be 24-inch square footing, 12 inches under the surface of the ground, with a 6x6 pine block to the sill. These piers shall be not less than 7 feet apart in any direction under the entire building. All interior sills shall be 6x6 No. 1 pine, especially where partition walls longer than 12 feet shall rest, all lower floor joists to be braced with 4x4 set on concrete footing."

A breach of said contract in respect to the foregoing provisions was alleged in the manner following:

"Plaintiff further shows to the court that the defendant did not carry out the terms of his said contract and agreement and construct said foundation in accordance with the plans and specifications and contract therefor and complete said building in the manner he was required to do in the contract and specifications; that he did not install and construct the said two rows of concrete foundation through the center of the building as therein called for and as required by such specifications; that the said two rows of concrete foundation as placed therein by the defendant were not reinforced as required by said specifications and were not at all points placed below the surface of the ground as called for and required in said specifications, and that the defendant, his agents, and employees left each of said concrete rows as were installed cut through the upper section and a part thereof removed; that the defendant did not place in said foundation and under said building the 6x6 sills as therein required and did not place said 6x6 sills in said foundation where the partition walls more than 12 feet long rested as required by said specifications, according to which the defendant agreed and obligated himself to build and construct said house, but placed said partition walls, which were plaster, on the subfloors of said building without support thereunder as required by said specifications and which support was necessary to keep said walls from sagging; and plaintiff further shows to the court that said defendant did not brace said lower floor joists with 4x4 set in concrete footing as required in said specifications and which he agreed to do."

In San Antonio Machine Co. v. Allen (Tex. Civ. App.) 268 S. W. 532, the rule is stated:

"If the terms of the written instrument are ambiguous, then, for the purpose of explaining the ambiguity, parol evidence may be heard, in response to appropriate pleadings, to show the real intention of the parties, as disclosed

by the facts and circumstances surrounding the transaction and the conduct of the parties."

[4] By reference to that portion of the contract pertaining to the foundation, hereinbefore set out, the ambiguous elements of the contract became readily apparent. If said provisions of the contract are supported or aided by any other terms thereof, such terms are not alleged or incorporated in appellee's pleadings. It would be impossible under these pleadings to ascertain the number and location of the 24-inch square concrete footings entering into the construction of the interior of said foundation. The dimensions of the foundation considered as a whole are so indefinite that little or no aid can be had from the placing of the piers "not less than 7 feet apart in any direction under the entire building." With such unexplained expressions who can say whether one or many of such footings and piers will be required, and, if many, how many? Granting that all interior sills were to be 6x6 No. 1 pine, "especially where partition walls longer than 12 feet shall rest," and that all lower floor joists were to be braced with 4x4's set in concrete footing, it cannot be determined from these recitals where the partition walls rest, nor the number, length, or location of said interior sills. The expression, "All lower floor joists to be braced with 4x4 set in concrete footing," is even more ambiguous and uncertain. Was one brace only required or were many intended? If so, how many, and where located? Upon what character of concrete footing and what was its intended dimension? Obviously the contract and specifications pertaining to the foundation of the building are ambiguous and to form the basis of recovery it was incumbent upon the plaintiff to explain by appropriate averments the meaning of such ambiguous expressions. Such averments were essential as a basis for the admission of parol testimony to explain the ambiguous features of the contract, all of which, in view of the special exceptions urged, should have been pleaded with such particularity as to inform the appellant of all of his defaults, either in omissions or defective performances for which damages were sought; and the pleadings should have shown such resulting damages to flow naturally and proximately from the breaches alleged. This character of pleading would be a prerequisite to recovery even though without it parol evidence admitted was ample to establish a contract. J. M. Radford Grocery Co. v. Jamison (Tex. Civ. App.) 221 S. W. 998; Boettler v. Tendick, 73 Tex. 488, 11 S. W. 497, 5 L. R. A. 270.

The instant proposition is the controlling one in this appeal and we have perhaps gone far enough in discussing it, but, in view of a reversal of this judgment for a new trial and a possible appeal therefrom, we will go further and state that we have carefully read the statement of facts herein with a view of obtaining therefrom a clear conception, from the plaintiff's viewpoint, of what plaintiff and defendant intended by the specifications relating to the foundation of the building. Aside from any question of pleading we were interested, by reason of the points made, to know the particulars and real character of the foundation in contemplation of the contracting parties. When we thus have reference to the record we find in the testimony of L. B. Powell, an important witness for the plaintiff, the following explanation of certain alleged defects and omissions in the foundation of the building, to wit:

"I will explain to the jury how that foundation is laid under there, and what we found under the building when we went under there. We found the concrete girder running from here (indicating), back here (indicating) on this line. The concrete beam come here. You call that the girder; the foundation. It ran up here; around here, and on the outside was the brick. We found a concrete girder down here, and here and back here about 4 feet. We found one here, making two concrete girders in the center and a concrete girder all of the way around the house. We found this 6x6 sill running across here and another one across here. There were two of those, I think, approximately divided. * * * This wall here (indicating) had sagged. In fact, all of the walls had sagged. Exactly how much they had sagged, in certain places I know, but in other places I do not know. In some places I do not know for sure how much I did bring them up. That was under the partition walls. Those partition walls to which I refer are more than 12 feet long. I can't see to read those specifications; that is, the part down here with reference to the sills on the ground. I can't see it. As to the specifications saying 'all interior sills shall be 6x6 No. 1 pine, especially where partition walls longer than 12 feet shall rest,' and as to me showing to the jury where the 6x6 should run, according to that specification, the 6x6 should run here to this wall; across this line; under this wall; should go under this wall here; under this wall here; this wall here; this one; this one; this one; this one, and this one."

For indefiniteness this characterizes too much of the record. It would be helpful, indeed, to an appellate court and ofttimes a considerable advantage to litigants for the trial court and attorneys to exercise the greatest precaution to see that the testimony gets into the record in such form that it will be intelligible.

There are numerous propositions in appellant's brief directed to matters that naturally and logically arose from the court's adoption of the view that the contract involved was unambiguous, and since such propositions but attack from a different angle the same vice (ambiguity) complained of in propositions numbers two and three above sustained, it

becomes unnecessary to discuss them all seriatum. Under proper pleadings such errors would not occur.

[5] Appellant's proposition 4 is based upon the action of the trial court in overruling a special exception to the plaintiff's petition wherein he alleged that the defendant and his agents, for the purpose of inducing plaintiff to pay the amount he agreed to pay under said contract, represented to the plaintiff that the work had been done in accordance with the plans and specifications. The allegation is objected to as being the conclusion of the pleader. Standing alone, the allegation would be objectionable for the reason stated. Boettler v. Tendick, supra.

[6, 7] By various propositions appellant complains of the recovery in this judgment by plaintiff of double damages. As stated, this was a suit in which the plaintiff sued the defendant for $4,500 damages, alleging the same to be the reasonable cost of installing and completing said building according to the contract, plans, and specifications, and in addition thereto sued to recover for temporary repairs the sum of $625.10, the same alleged to be necessary to prevent further injury to said building arising from the failure of the defendant to comply with his contract. When the breach of a building contract is involved the rule is well established in this state that, where the defects can be remedied without impairing the building as a whole, then the measure of damages is the reasonable cost of remedying the defects; and, where the defects cannot be remedied without impairing the building, then the measure of damages is the difference between the value of the building as constructed and as such value would have been if constructed according to the plans and specifications. McBurnett v. Smith & McCallin, 286 S. W. 599; Atkinson et al. v. Jackson Bros. et al. (Tex. Civ. App.) 259 S. W. 280; Id. (Tex. Com. App.) 270 S. W. 848, 38 A. L. R. 1377.

[8] However, this rule in no respects conflicts with the other important rule which allows an injured party, by reason of the breach of a contract, to recover such elements of damages for temporary repairs as are imposed upon him by the breach, provided such expenses were the natural consequences of the breach and reasonable under all the circumstances. It should appear that such expenses for temporary repairs were incumbent on the appellant under the rule governing "avoidable consequences," reasonable in amount and in good faith designed to diminish developing and impending injuries or damage.

[9] If, as in this case, the plaintiff in good faith found it necessary to install a system of temporary supports under the foundation of the building in order to arrest a careening of the walls or sagging of the floors until repairs permanent in nature and of the character called for in the broken contract could be made, then it occurs to us that the expenses for such temporary repairs would be proper elements of damage, in addition to those recoverable under the general rule as laid down in the authorities last cited. Such could hardly be denominated double damages. In this case the difficulty is that it is not made to appear entirely clear from the pleadings and testimony that the temporary supports and repairs were in fact expedient and made for the above purpose. However, we have concluded to overrule the assignment on principle as the pleading and evidence will probably be more specific on another trial.

[10] By appellant's ninth and kindred assignments it is urged that the court erred in submitting to the jury the special issue, "Did the defendant construct the foundation of the plaintiff's building in accordance with the plans and specifications and contract?" in that the same submitted several distinct issues in one question. The defendant had entered a general denial and there were several issues involved. The testimony is long and we shall not undertake to repeat the portions pertinent to such issues. However, our conclusion arising from a consideration of the testimony and the pleadings is that the issue is in violation of article 2189 of the Revised Statutes, requiring each issue to be "submitted distinctly and separately." Interstate Casualty Co. v. Hogan (Tex. Civ. App.) 232 S. W. 354; K. C., M. & O. Ry. Co. v. Weatherby (Tex. Civ. App.) 203 S. W. 793; K. C., M. & O. Ry. Co. v. Bomar (Tex. Civ. App.) 207 S. W. 570.

[11] The court submitted to the jury another issue, as follows:

"What would be the reasonable cost of remedying the defects or omissions in said building in such a way as to make such building conform to the contract and specifications?"

To this the jury answered, "$1,995.75." This was submitted over various objections by the defendant, one of which was that the court submitted to the jury a question of law as to the construction of the contract and what it would take to make the building conform thereto. This action of the court furnishes the basis for various propositions found in the appellant's brief. The objection was good and the propositions are sustained upon the authority of Watson v. Patrick (Tex. Civ. App.) 174 S. W. 632; Hickory Jones Co. v. Mettaur (Tex. Civ. App.) 208 S. W. 745; Varnes v. Dean (Tex. Civ. App.) 228 S. W. 1017.

In the opinion last cited the issue submitted by the trial court was:

"Did the lease, as executed, actually contain the essentials of the written agreement previously entered into between plaintiff and the witness Holmes, if any there was?"

The jury answered, "No."

The issue being objected to and an assignment presented in the appellate court, that court sustained the assignment with the following comment:

"No direction is given to the jury in the charge as to what the essentials of the written agreement alleged to have been made by plaintiff and his wife and witness Holmes were. Nor is any issue of fact, unmixed and separate from questions of law, submitted in this issue. As to what were the essentials of the contract, the court should have determined and submitted to the jury the difference which the plaintiff alleged and which the facts tended to establish between the two instruments. The charge of the court must submit questions of fact solely to the decision of the jury, but should not include questions of law which the court only is authorized to determine."

[12] In consideration of the propositions here discussed we have concluded that under the facts and pleadings of this case the action of the court was erroneous each time it propounded to the jury a question in the form of that above, and left the jury to answer such interrogatory without any construction of the plans, specifications, and contract by the court. Such issues were mixed questions of law and fact and contained the vice pointed out by the appellant's objections and his propositions based thereon are sustained.

[13, 14] The court submitted plaintiff's special issue No. 1:

"Did the plaintiff at any time before the payment for said building have full knowledge of the manner in which such foundation was constructed?"

The appellant contends that this action of the court was erroneous, in that the issue was upon the weight of the evidence and that the defendant would not be liable for alleged defects if the plaintiff had knowledge thereof or could have discovered the same by the exercise of ordinary care. We do not think the issue subject to the first objection; and, as to the last, the appellant was not injured thereby, since the same question practically in form suggested by the appellant was submitted in question No. 8 of the court's main charge and answered in the negative. The proposition is overruled and for like reasons proposition 16 is overruled, but in what we have said we are not to be understood as giving assent to the proposition implied that a waiver could be predicated upon any supposed duty on the part of the owner to exercise ordinary care to discover defects in a building being constructed for him. 2 Williston on Contracts, § 724.

[15] Appellant by a proposition contends that appellee having based his suit on a written contract and sought recovery for $135 damages by reason of the failure of appellant to install six bookcases "which he agreed to

do" and such portion of the contract whereby the appellant, defendant below, so agreed and bound himself, not being set out, the pleading was subject to demurrer. The only allegations in the plaintiff's petition with reference to the installation of the bookcases are:

"That the defendant has failed and refused to install said six bookcases which he agreed to do, and that the reasonable cost of installing same according to the contract and specifications was $135, making a total damage to the plaintiff herein in the sum of $5,350.10; that, according to the plans and specifications and agreement of the parties, the defendant agreed to install said bookcases."

These general allegations were insufficient as against the special exception urged. What is said in disposing of propositions 2 and 3 is pertinent here, and J. M. Radford Gro. Co. v. Jamison and Boettler v. Tendick, supra, are here cited as authority for sustaining this proposition.

[16] Still another proposition assails the action of the trial court in submitting issue No. 5, as follows: "What would be the reasonable cost of installing the six bookcases in said building according to the plans and specifications?" in that under the pleading and evidence there could be no recovery for this item and since the undisputed evidence showed that the installation of the bookcases according to the plans and specifications was impossible. From the testimony and under the pleading purporting to present that issue it appears that six bookcases 4 feet wide were to be installed between two windows separated by a bare space of 18 inches. Under this state of facts the contract in that particular was indefinite and impossible of performance. Corbin v. Milward, 158 Ky. 308, 164 S. W. 974; Sexton v. City of Chicago, 107 Ill. 323. This proposition is sustained.

[17] Appellant in his twenty-third proposition asserts there is error in the action of the trial court in the exclusion of his testimony, to the effect that it was usual and customary in the construction of the character of house in question to cut the foundation beams in order to install the plumbing.

[18, 19] By reference to the foundation plans and the pleadings relating thereto, there appears to be nothing uncertain or ambiguous with reference to how the two central rows of concrete foundation should be constructed. That provision of the contract as presented being clear and a suit for damages predicated by the owner on the action of the contractor in cutting openings in such rows approximately 16 inches deep and 8 inches wide for the installation of the plumbing, we do not believe there is any law authorizing or enabling the defendant to relieve himself from liability for such damages, if any, accruing therefrom by pleading and proving that the custom of the trade author-

ized the cutting of the foundation in that manner and for the purpose indicated. A prevailing custom may, under proper pleading and proof, enter into and be shown to be an integral part of the contract, but we are unable to find any authority for the proposition that a builder or contractor may construct an essential and primary portion of a building foundation and then practically destroy it in the process of installing plumbing and escape liability for such conduct by pleading a custom in that respect. We do not see how it could be said or contended that there exists a custom which would excuse the violation of a plain and specific provision of the contract sanctioned by law and public policy. Custom will not be permitted to destroy, contradict, or modify what is otherwise manifest. 2 Williston on Contracts, § 657; Oxford v. Rogers (Tex. Civ. App.) 238 S. W. 295.

Upon the propositions sustained and for the reasons assigned, the judgment of the trial court is reversed, and this cause remanded.