A. F. CONNER & SONS, INC.,
Appellant,

v.

TRI–COUNTY WATER SUPPLY
CORPORATION, Appellee.

No. 4866.

Court of Civil Appeals of Texas,
Eastland.

Sept. 2, 1976.

Supplemental Opinion Sept. 23, 1976.

Rehearing Denied Sept. 23, 1976.

John Fulbright, Wiley Stem, Jr., Wilson, Olson, Stem & Farr, Waco, for appellant.

Leonard L. Gorin, Clark, Fisher, Gorin, McDonald & Ragland, Waco, for appellee.

McCLOUD, Chief Justice.

Tri-County Water Supply Corporation, a non-profit corporation, sued A. F. Conner & Sons, Inc., and Fidelity & Deposit Company of Maryland, the surety on Conner's performance bond, for damages resulting from Conner's failure to perform its obligations under a written contract to construct a water distribution system. The jury found that the contract was not substantially performed because Conner used material and workmanship which were not of good quality in constructing the pipeline. Judgment was rendered for plaintiff against defendants for $389,815.85, plus prejudgment interest of $75,282.25, for a total of $465,098.10. The judgment provides that Fidelity & Deposit recover over against Conner. Defendants have appealed.

Conner contracted to build a rural water distribution system containing five plants or pump stations and approximately 178 miles of pipeline. The pipeline was to be constructed of PVC (poly vinyl chloride) pipe varying in size from one inch to eight inches. The pipe was put together with "glue" or "cement" in sections from twenty to thirty feet in length. Tri-County paid Conner $522,480.13 for constructing the water system. $389,815.85 of the contract figure represented the cost of the pipeline.

By the time of trial approximately 1,000 leaks had been repaired since the completion of the system. Most of these leaks were pipeline leaks, but several were "adapter" leaks. Plaintiff contended the pipeline had no market value and the leaks were caused by poor workmanship and material. Defendants argued the leaks resulted from improper design, hot water, excessive pressure, and improper maintenance.

In special issues 1 and 2 the jury found that Conner used materials and workmanship in construction of the pipeline which were not of good quality.

Special issue 3 and the answer thereto are as follows:

"ISSUE NO. 3:

Do you find from a preponderance of the evidence that the contract by A. F. Conner & Sons, Inc. to construct the water distribution system in question was not substantially performed because of the use of material and workmanship that were not of good quality in the construction of the pipeline (if you have so found)?

By 'SUBSTANTIALLY PERFORMED' as used in the above issue, is meant that there must have been per-

formance of all material and essential particulars required by the written contract, and permits only such deviations and omissions as can be corrected without great expense and which do not impair the water distribution system in the performance of the purpose for which it was intended.

Answer 'WE FIND THE CONTRACT WAS NOT SUBSTANTIALLY PERFORMED,' or 'WE DO NOT SO FIND'.

ANSWER: We find the contract was not substantially performed."

Conner argues the definition given is erroneous because it does not take into consideration defects which might be repaired at small cost or unessential defects or omissions which could be remedied without impairment of the water distribution system as a whole.

The court in *Hutson v. Chambless,* 157 Tex. 193, 300 S.W.2d 943, 945 (1957) said:

" 'Where it is necessary, in order to make the building comply with the contract, that the structure, in whole or in material part, must be changed, or there will be damage to parts of the building, or the expense of such repair will be great, then it cannot be said that there has been a substantial performance of the contract. Generally, where there has not been such substantial performance, the measure of the owner's damage is the difference between the value of the building as constructed and its value had it been constructed in accordance with the contract. Such a recovery would be just to both parties. It is manifest that to measure the owner's damage by the cost necessary to make the building conform to the contract would often be an injustice, because in many instances such cost would amount to almost as much as the original contract price.'

That rule was followed in *Totten v. Houghton,* Tex.Civ.App., 2 S.W.2d 530, no writ history, and authorities therein cited. It is announced in practically the same language in 9 American Jurisprudence, Building and Construction Contracts, Sec. 43, p. 33. Many authorities supporting the rule are annotated in 23 A.L.R. 1436, 38 A.L.R. 1383, and 65 A.L.R. 1298."

In *County of Tarrant v. Butcher & Sweeney Construction Company,* 443 S.W.2d 302, 307 (Tex.Civ.App.—Eastland 1969, writ ref. n. r. e.), this court stated:

"The rule is stated in McCormick on Damages, 1935, Section 168, at pages 648–649, as follows:

'In whatever way the issue arises, the generally approved standards for measuring the owner's loss from defects in the work are two: First, in cases where the defect is one that can be repaired or cured without undue expense, so as to make the building conform to the agreed plan, then the owner recovers such amount as he has reasonably expended, or will reasonably have to spend, to remedy the defect. Second, if, on the other hand, the defect in material or construction is one that cannot be remedied without an expenditure for reconstruction disproportionate to the end to be attained, or without endangering unduly other parts of the building, then the damages will be measured not by the cost of remedying the defect, but by the difference between the value of the building as it is and what it would have been worth if it had been built in conformity with the contract.'

To the same effect is the Restatement of Contracts, Section 346(1)(a)(II); *J. E. Hollingsworth & Co. v. Leachville Special School Dist.,* 157 Ark. 430, 249 S.W. 24; *Campbell v. Koin,* 154 Colo. 425, 391 P.2d 365; *Boggs v. Shadburn,* 65 Ga.App. 683, 16 S.E.2d 234; *H. P. Droher & Sons v. Toushin,* 250 Minn. 490, 85 N.W.2d 273; 5 Corbin on Contracts, 1964, Section 1090."

The submitted definition of "Substantially Performed" specifically permits deviations and omissions which can be corrected without great expense and which do not impair the water distribution system. Conner's point is overruled.

Special issues 8 and 9 and the jury's answers thereto are as follows:

"ISSUE NO. 8:

What do you find from a preponderance of the evidence would have been the reasonable market value on December 12, 1970, of the water distribution system built by defendant A. F. Conner & Sons, Inc. if the pipeline of said system had at that time contained only material and workmanship of good quality?

Answer in dollars and cents.

ANSWER: $522,480.13."

"ISSUE NO. 9:

What do you find from a preponderance of the evidence was the reasonable market value on December 12, 1970, of the water distribution system built by defendant A. F. Conner & Sons, Inc., in the actual condition which such system then was containing the material, if any, and workmanship, if any, that were not of good quality which had been used by defendant A. F. Conner & Sons, Inc. in the construction of the pipeline in question?

Answer in Dollars and Cents.

ANSWER: $132,664.28."

■ Fidelity argues the court erred in using the December 12, 1970 date because the correct measure of damages is the difference in value as of the time of trial and the value had the system been constructed in accordance with the contract. Fidelity has no point or assignment of error raising an objection that issues 8 and 9 should have used the time of trial as the proper date. Therefore, the argument and authorities cited for that contention are inapplicable.

■ Fidelity further argues the certification of completion was dated June 4, 1970, rather than December 12, 1970. Conner repaired, at its expense, all leaks in the system until December 12, 1970. Since that date Tri-County has repaired all leaks. Fidelity has failed to show reversible error.

■ Defendants urge that the court erred in admitting the testimony of William Garner given at a former trial of the case. We disagree.

In the first trial Garner testified that the pipeline had no value because of the excessive number of leaks. This testimony was read to the jury in the instant trial. The testimony of Garner at the former trial was given on the same issues, before the same parties, and full opportunity existed for cross-examination.

The rule to be followed was recently announced in *Hall v. White*, 525 S.W.2d 860, 862 (Tex.1975) as follows:

" '. . . The only question is the unavailability of the witness. Former testimony is not admissible if a witness is available at the subsequent trial. The party offering the former testimony must therefore prove unavailability, which means in Texas 'that the witness is dead, or that he had become insane, *or is physically unable to testify*, or is beyond the jurisdiction of the court, or that his whereabouts is unknown and that diligent search has been made to ascertain where he is, or that he has been kept away from the trial by the adverse party.' *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 697 (1941); *Houston Fire & Casualty Insurance Co. v. Brittian*, 402 S.W.2d 509 (Tex.1966)." (Emphasis added.)

Garner was hospitalized at the time of trial. He was scheduled for immediate lumbar disc surgery. Plaintiff properly proved that the witness was "physically unable to testify". *Missouri-Kansas-Texas Railroad Co. v. Bush*, 310 S.W.2d 404 (Tex. Civ.App.—Austin 1958, writ ref. n. r. e.); *Harris v. Reeves*, 421 S.W.2d 689 (Tex.Civ. App.—Waco 1967, writ ref. n. r. e.). Defendants' reliance upon *Houston Fire & Casualty Insurance Co. v. Brittian*, 402 S.W.2d 509 (Tex.1966) is misplaced. There the court noted that none of the exceptions permitting the introduction of testimony given at a former trial existed. Neither *Hall v. White*, supra, nor *White v. Natural Gas Pipeline Co. of America*, 444 S.W.2d 298 (Tex.1969) support defendants' argument. Those cases were concerned with the "beyond the jurisdiction" of the court exception and not the "physically unable to testify" exception.

■ Defendants next complain of the trial court's sustaining plaintiff's objections to

Conner's offer into evidence of two exhibits purporting to show the location of certain leaks. The leaks were designated in the exhibits by "X-marks" made by Aubrey and Dean Conner after studying the notebooks of Leon Afinowicz and statements for leak repairs sent to Conner. The exhibits did not include all of the leaks. The exhibits did not purport to show any of the 450 leaks repaired by Conner prior to December 12, 1970. Also, the exhibits did not show the "adapter" leaks repaired by Afinowicz.

After the court sustained plaintiff's objections counsel for Conner fully questioned the witness, Aubrey Conner, before the jury. The witness testified at length regarding the exhibits and the location of the leaks as reflected by the exhibits.

We think the admission or exclusion of the exhibits was within the discretion of the court and the exclusion did not constitute reversible error. *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376 (Tex.1965).

■ Defendants contend the court erred in refusing their requested special issues inquiring if all or a portion of plaintiff's damages were caused by excessive water temperature, excessive water pressure, improper design, improper inspection, or improper maintenance.

The contract contained a specific provision requiring that "Both workmanship and materials shall be of good quality." In special issues 1 and 2 the jury found Conner used poor workmanship and materials in the construction of the pipeline. In special issue 3 the jury found that because of the poor workmanship and materials the contract was not substantially performed. Special issues 8 and 9 asked the jury to find the difference in the as contracted and as built market value of the water system. Special issue 10 asked the jury to find the reasonable cost of repairing the pipeline. The jury answered $389,815.85 to issue 10. Special issue 10, however, became an immaterial issue in view of the jury's answer to special issue 3. McDonald, Texas Civil Practice, Vol. 4, § 17.31. We think the court submitted the controlling issues *Hutson v. Chambless,* 157 Tex. 193, 300 S.W.2d

943 (1957); *Totten v. Houghton,* 2 S.W.2d 530 (Tex.Civ.App.—Eastland 1927, no writ); *Tarrant County v. Butcher & Sweeney Construction Co.,* 443 S.W.2d 302 (Tex.Civ.App. —Eastland 1969, writ ref. n. r. e.).

Under the contract Tri-County was responsible for the "adequacy of the design" provided Conner "has complied with the requirements" of the contract. The contract further provided the burden of proof of "compliance" was upon Conner to show it had "complied with said requirements of the contract". Neither Conner nor Fidelity tendered an issue seeking a jury determination as to Conner's compliance.

Many of the requested issues seek to determine if the "leaks" were caused by hot water, high pressure, or improper operation. Other requested issues seek to determine if plaintiff's acts caused "pipe joints" to fail.

We have examined the requested issues and hold the court did not err in refusing the tendered issues. The issues were either evidentiary, immaterial, raised legal rather than fact questions, inquired of matters excluded by contract or were inferential rebuttal issues. See: *Houston Fire & Casualty Insurance Co. v. Riesel Independent School District,* 375 S.W.2d 323 (Tex.Civ. App.—Waco 1964, writ ref. n. r. e.); *San Augustine Independent School District v. Freelove,* 195 S.W.2d 175 (Tex.Civ.App.— Beaumont 1946, writ ref. n. r. e.); *City of Houston v. Lurie,* 148 Tex. 391, 224 S.W.2d 871 (1949); *Triton Oil & Gas Corp. v. Moran Drilling Company,* 509 S.W.2d 678 (Tex.Civ. App.—Fort Worth 1974, writ ref. n. r. e.); *Winandy Greenhouse Construction v. Graham Wholesale Floral, Inc.,* 456 S.W.2d 470 (Tex.Civ.App.—Fort Worth 1970, no writ); *Neale v. Kirkland,* 486 S.W.2d 165 (Tex.Civ. App.—Dallas 1972, no writ); and *Neuhoff Brothers Packers, Inc. v. McCauley,* 399 S.W.2d 929 (Tex.Civ.App.—Waco 1966, writ ref. n. r. e.).

■ Defendants urge the court erred in awarding plaintiff prejudgment interest. We disagree. The court in *Texas Company v. State,* 154 Tex. 494, 281 S.W.2d 83, 92 (1955) said:

". . . interest as damages is recoverable as a matter of law when the principal damages are fixed by conditions existing at the time the injury is inflicted."

The jury found in special issues 1 and 2 Conner used poor workmanship and materials in constructing the pipeline. In issues 8 and 9, the jury determined the damages suffered as of December 12, 1970. We hold the court properly awarded prejudgment interest. See *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897); *Smart v. United States Fidelity & Guaranty Co.,* 513 S.W.2d 291 (Tex.Civ.App.—Waco 1974, writ ref. n. r. e.); *McDaniel v. Tucker,* 520 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1975, no writ); and *Melody Home Manufacturing Company v. Morrison,* 502 S.W.2d 196 (Tex. Civ.App.—Houston (1st Dist.) 1973, writ ref. n. r. e.).

■ Defendants contend the jury's answer to special issue 9 is against the great weight and preponderance of the evidence, and the $389,815.85 judgment based on issue 9 is excessive. We agree.

Plaintiff contended and its witnesses testified that the 178 mile pipeline which cost $389,815.85 had no market value. The jury answered special issue 9 to the effect the water system as built had a market value of $132,664.28. This was the contract price of the system excluding the pipeline.

In reaching the conclusion that the pipeline portion of the water system had "O" market value, plaintiff's witnesses, who were interested witnesses, concluded that the leaks were continuing to develop "throughout" the 178 mile line, and the only feasible way to correct the problem was to abandon the line and parallel it with a new 178 mile line.

It is uncontroverted that any pipeline the size of the Tri-County line will normally develop some leaks. It is also conceded by defendants that the Tri-County line developed an excessive number of leaks.

Conner repaired the leaks until December 12, 1970, and after that time the leaks were repaired by Leon Afinowicz who was a part-time employee of plaintiff. Afinowicz kept a notebook which contained information regarding each leak repaired. He stated that he had repaired "approximately" 600 leaks, but that "a hundred or a hundred and fifty" were adapter leaks. Plaintiff's witness, James Duff, the engineer who prepared the plans for the system and supervised the construction, testified that the "adapter" leaks did not substantially affect the value of the system. After reviewing Afinowicz's notebooks and leak repair statements sent to the contractor, Aubrey and Dean Conner located certain line leaks on the "as built" plans from the time plaintiff started repairing the leaks until the time of trial. This was approximately a three-year period. The "as built" plans, which were prepared by Duff, contained 36 sheets which showed the location of various segments of the pipeline. The miles of pipeline depicted varied on each sheet from approximately 2.23 miles shown on sheet 4 to 7.12 miles shown on sheet 22. Aubrey Conner testified that they were able to locate 382 line leaks by using the notebooks and statements. He stated they did not locate adapter leaks, but did specifically locate each line leak.

Aubrey Conner's testimony, which was not directly refuted, shows that in area 5 of the water system, which contains approximately 18 miles, there had only been 3 leaks in the 3 year period. Also, during the year before trial some 50.5 miles of the pipeline had no leaks, and an additional 56.09 miles, had only 12 leaks. This evidence shows that there were only 12 leaks in the 106.59 miles of pipe during the one year period before trial. There is evidence the reasonable cost for repairing a leak is about $50. We note further that from Aubrey Conner's testimony, which was not disputed, that 87 of the 382 leaks occurred in a 6.49 mile span, and 101 of the 382 leaks occurred in an 8.15 mile span of the pipeline. We also note from Aubrey Conner's testimony that only sheets 12 and 31, depicting approximately 8.79 miles of pipeline, showed no leaks during the 3 year period. Plaintiff made no attempt to specifically locate individual leaks, but relied upon generalized

statements that the leaks were located throughout the pipeline.

Plaintiff was losing approximately 62% of its water. This is an abnormal loss. Leaks were continuing to develop at the time of trial. The repair of leaks is costly. The evidence unmistakably reflects that sections of the pipeline should be replaced. We think, however, the jury's finding, even though supported by expert opinion testimony, that the entire 178 mile pipeline has no market value, is against the great weight and preponderance of the evidence. The water system is functioning and has grown considerably in number of customers since its inception.

We have considered all the evidence and concluded that the jury's finding in special issue 9 is against the great weight and preponderance of the evidence and the $389,815.85 judgment based on such finding is excessive. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Since the only reason for reversal is the excessiveness of the verdict, we are required to indicate the amount by which we consider the verdict excessive and give plaintiff a reasonable time within which to file a remittitur of such excess. *Carter v. Texarkana Bus Company,* 156 Tex. 285, 295 S.W.2d 653 (1956). We think the damages awarded by the jury are excessive by $100,000. The prejudgment interest attributable to such $100,000 excess is also excessive.

The judgment of the trial court will be affirmed if plaintiff will file in this court within thirty days hereof a remittitur in writing of $119,542.33. If such remittitur is not so filed, the judgment will be reversed and the cause remanded for a new trial.

Affirmed on condition of remittitur.

### SUPPLEMENTAL OPINION

Tri-County Water Supply Corporation filed a remittitur of $119,542.33 on September 20, 1976, in compliance with the suggestion of a remittitur by this Court. The judgment of the trial court is reduced by the amount of such remittitur, and as so modified, the judgment of the trial court is affirmed.

Remittitur filed. Judgment modified and as modified, affirmed.