The ˙AETNA CASUALTY &
SURETY CO., Appellant,

v.

FLORENTINE MARBLE & TILE
CORPORATION, Appellee.

No. 6522.

Court of Civil Appeals of Texas,
El Paso.

March 9, 1977.

Law Offices of Alfred W. Offer, Alfred W. Offer, San Antonio, for appellant.

Wolff & Wolff, Walter C. Wolff, Jr., San Antonio, for appellee.

## OPINION

WARD, Justice.

Florentine Marble & Tile Corporation sued The Aetna Casualty and Surety Company for an alleged burglary loss of certain marble, tile, and personal property under a merchant's property policy. Trial was to a jury which found issues in favor of the Plaintiff, and based on the verdict, judgment was entered for Florentine in the amount of $112,503.51. On this appeal, Aetna presents evidentiary points attacking the finding by the jury that a theft occurred in the burglary and the amount of the alleged loss, and alleged jury misconduct. We affirm on condition of remittitur.

Lawrence Iacono, the Plaintiff's President, formed a Texas corporation called Florentine Marble & Tile Corporation in which he and his wife owned all of the capital stock. It started in business June 1, 1973, at 10820 Gulfdale Drive in San Antonio. Marble and tile were imported from Italy into its stock, but a portion of its business came from it acting as broker where the material would be imported direct to the customer. The amount of material that was received into inventory at the Plaintiff's business was disputed, but it seems certain that during the period very few sales were ever made out of the inventory in San Antonio, except that considerable material was sold to Mr. Iacono individually. He had purchased some property at 16207 San Pedro Avenue in San Antonio, and as owner had constructed a large building between February and October, 1974, intending to lease the building to the corporation. With this in mind, he purchased from the corporation a considerable amount of the marble and tile that was on hand. On August 23, 1974, a fire occurred at Benny's Pool Maintenance, which was next door to the leased premises on Gulfdale, and damage was sustained to the equipment, machinery, and stock of merchandise of the corporation. On August 27, 1974, Florentine Marble & Tile Corporation made a claim against Benny's Pool Maintenance and its liability carrier, Great American In-

surance Company, claiming a loss of $70,289.66, of which amount $44,277.94 was claimed as destroyed merchandise. The day after the fire, Iacono applied for the merchant's property insurance policy in question, and the policy was issued effective August 26, 1974. On September 27th, Mr Iacono closed his office on Gulfdale at 5:00 o'clock P.M. At about 10:00 o'clock that night, he returned to the office and found the front door open, the main items of his office equipment missing, and, according to him, the warehouse behind his office emptied of its inventory. During the next two days, and after Iacono and his wife had checked, a list was prepared of the missing items which included office equipment, machinery, marble works, marble sills, decorative ceramic tiles, onyx ashtrays, and bathroom accessories. This claim totaled $84,616.70, and a copy was furnished to The Aetna Casualty and Surety Company. On October 10th they furnished additional information to the insurance company, at which time they reported a claim loss of $112,553.51 as being the total amount including their lost profit on the materials. On November 11, 1974, a proof of loss was submitted to the Defendant setting the claim at $84,616.70.

The Defendant first challenges the findings of the jury that the theft occurred on September 27, 1974, by a series of no evidence and insufficient evidence points. Included in this attack are also against the great weight points regarding negative findings of the jury on the Defendant's defensive issues regarding the theft. In the main, the Defendant has to rely on the unusual circumstances of the case and claimed inconsistencies in the insured's own proof. Thus, it points to the insured's poor financial condition, the two serious losses occurring within the period of a month, and to the theft loss occurring within the short period after the coverage was secured. The Defendant further argues that even the circumstances of the theft were questionable as Iacono closed the building at 6:00 o'clock P.M., returned after 10:00 o'clock P.M., and at that time he found his front door open and the place ransacked. The police officer who was called testified that at 8:00 o'clock P.M. he had patrolled the area, found it normal, that the company forklift in the warehouse was cold when he examined it after being called, and that he could not testify as to what was missing. Additional testimony was introduced which showed that the missing marble and tile would have weighed between 100,000 and 200,000 pounds; that more than two large trucks would have had to have been loaded and moved within the period of time that the theft had occurred; and that it was unreasonable to assume that such an amount could have been taken between the times when the police visited the area and the time that the policeman examined the premises.

On the other hand, Iacono and his wife were the only two people who really knew the business, what the inventory consisted of, how it was added to, how it was disposed, what happened to the items damaged in the fire, and the circumstances of the theft. He testified that on the night of the theft the premises were secured, and when he returned, the front door was opened, the padlock on the warehouse had been broken, there was dust in the air, and the inventory which he reported was missing. He immediately contacted the police, cooperated with them, and, under his version, there would have been an adequate period of over four hours to have loaded the material and carried it away.

■ Without adding further, we have examined the record, and after considering only the favorable evidence and the inferences arising which support the jury finding, the legal insufficiency point concerning the theft is overruled. After considering all of the evidence, the factual insufficiency of the evidence point and against the great weight points as to the theft and the related defensive issues are likewise overruled.

■ One of the Defendant's great weight points complains of the jury's negative answer to a special issue inquiring if the Plaintiff failed to submit a proper proof of loss to the Defendant as required by the

policy. Iacono testified that he notified the Defendant and furnished invoices immediately after the loss, and, on October 10, 1974, notified the Defendant again in writing, furnished copies of his original invoices, packing lists, and a copy of the Police Department Report. Finally, on November 11th, he furnished a sworn proof of loss on a form provided by the Defendant's adjuster for a total claim of $84,616.70, and attached thereto an itemized list of what was lost. Copies of these letters, inventories, and the proof of loss were introduced in evidence. The jury evidently believed this testimony. Further, on December 6th, the attorney for the Defendant notified the Plaintiff in writing that his claim was denied, and the Plaintiff, in his pleadings, alleged that the Defendant by the denial waived any valid objection to the sufficiency of the proof of loss. This stands uncontroverted. The unqualified denial of liability waived any objection that might have existed as to the sufficiency of the proof. 32 Tex.Jur.2d Insurance, Sec. 384 at 594 (1962). The point is overruled.

By its points 9 through 11, the Defendant complains of three items of jury misconduct. These assert that the jury erroneously placed the burden of proof on the Defendant to show that there had not been a theft; that the jury erroneously considered and awarded the Plaintiff a profit when it found that the actual cash value of the stolen personal property was $112,553.51; and that in making the latter finding, it disregarded the Court's instruction by failing to exclude items damaged or destroyed in the fire. Upon hearing the Defendant's motion for new trial, two jurors testified. Juror Chapa stated that there was never any statement made in the jury room that the insurance company had the burden of showing that there was no theft. Juror Short testified that in his own mind he felt that the insurance company had not sustained its burden of proving that there was no theft, but that was only his own opinion. He did not testify that any such discussion occurred. He further denied that there ever was any discussion made that the jury would include any of the fire loss in arriving at the figure as to the cash value of the stolen property. Both jurors indicated that the jury was split in its finding on the amount of damages, and some were for a higher figure than the one arrived at. The Plaintiff had testified that the fair market value of the stolen property was $125,000.00. A $125,000.00 figure was discussed by the jurors, but they could not find any written evidence in the exhibits showing that figure. They did find the exhibit previously referred to where Iacono had described his loss at being $112,553.51, and where he had stated in the covering letter that this included his profit loss. Just how the jury arrived at their answer is not shown by the evidence, although it is evident that this same figure was returned by the jury as their verdict on the damages. Mr. Chapa stated that one juror mentioned that the insurance policy provided for lost profits, but just when the statement was made or whether the jury agreed to accept it was not disclosed.

One complaining of jury misconduct under Rule 327, Tex.R.Civ.P., has the burden to prove that the overt act of misconduct occurred, that it was material misconduct, and from the record as a whole injury probably resulted. *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969). If the evidence offered at the hearing on the motion for new trial was conflicting as to whether misconduct occurred, the decision of the trial Court on a question is binding on appeal. *Brawley v. Bowen*, 387 S.W.2d 383 (Tex.1965). The Defendant has failed in its proof as to the occurrence of any misconduct regarding the erroneous placing of the burden of proof and the failure to exclude the fire damaged items. There is a positive denial by at least one juror that any such discussion occurred. How Juror Short reasoned regarding the burden of proof was immaterial. The mental process of the juror may not be probed and faulty or illogical reasonings are not misconduct. *Griffith v. Hudspeth*, 378 S.W.2d 153 (Tex. Civ.App.—San Antonio 1964, no writ), and 3 McDonald, Texas Civil Practice Sec. 14.17 (1970).

Special Issue No. 2 required the jury to determine the actual cash value of the stolen property, and the jury was instructed to exclude from its consideration any personal property destroyed or damaged as a result of the previous fire. No other instruction or limitation, such as lost profit, was placed upon their consideration. The letter dated October 10, 1974, from Iacono was in evidence without limitation and, as pointed out, he had asserted in the letter that his net loss from the burglary to his inventory was $84,626.70 and that his total loss was $112,553.51, and that this included his profit loss. This admissible and unobjected evidence was discussed by the jury and was proper. No instruction by the Court was violated. There was the testimony that the actual cash value of the stolen property was $125,000.00. The latter having been properly admitted, the defendant should have anticipated that the jury would consider it in arriving at a verdict, and should have requested an instruction that the jury not consider lost profits. Having failed to make such a request, it cannot complain at this time of jury misconduct. *Blaugrund v. Gish*, 142 Tex. 379, 179 S.W.2d 266 (1944). The trial Court having as usual, instructed the jury to consider only the evidence seen and heard in the courtroom, we conclude that the jury was not guilty of misconduct if it did discuss any evidence of lost profit. Regardless, as seen later, the matter becomes harmless. All points on jury misconduct are overruled.

The Defendant contends by its third and fourth points that there is no evidence and insufficient evidence to support the finding of the jury that the actual cash value of stolen personal property was $112,553.51. The Plaintiff attempted to prove the value of the property by inventories which were dated before and after the fire and after the theft. In addition, it attempted to show the purchase and the cost of all items which it originally brought to San Antonio, the purchase and cost of the items after it moved to San Antonio, the sales of all merchandise made to the public, the sale of the merchandise to Iacono individually, the

items which had been broken and damaged in handling, the items and cost which were damaged and lost in the fire, and, finally, the items which Iacono testified were lost in the theft. There is no question but that Iacono qualified as an expert in the business, and he was permitted to testify that in his opinion the actual cash value of the missing items in San Antonio on September 27, 1974, was $125,000.00. While an objection was made to a part of the testimony of Iacono when the question was asked and which was sustained, we are satisfied from the record that the stated testimony was admitted. A detailed argument of the Defendant contending to the contrary has been examined and it is overruled. Having considered only the evidence favorable to the issue and having disregarded all evidence to the contrary, the no evidence point is overruled.

In reviewing all of the evidence, the Defendant points to the admittedly poor records which were kept and which were introduced into evidence. A late income tax return for the year 1973 was produced and it was not prepared and filed until June, 1974. In that return, Iacono, as President of the corporation, reported the merchandise and appreciated machinery and equipment inventory as of December 31, 1973, as being $80,239.00. In making the claim loss for the stolen items, the figures include office equipment and machinery which had been on hand for some years and on which no depreciation was allowed. Other discrepancies could be noted, but of most importance to us is the fact that, shortly after the loss, on October 10, 1974, Iacono concluded that the net loss according to the inventory and invoices represented a total of $84,626.70. Finally, on November 11, 1974, when the proof of loss was submitted, the figure $84,616.70 was submitted as the stolen property loss.

We can accept the explanation made by Iacono as to a mistake being made in the figure for his ending inventory on December 31, 1973, and the fact that in his various claims he never added in shipping and brokerage expenses, import duties, and factors

relating to an inflationary market, but we are also faced with the fact that by the time the proof of loss was made, Iacono had been working on the inventory regularly since the fire loss, had been repeatedly contacted by claim agents, and undoubtedly knew that they were requiring exact figures. Under the testimony, we can be satisfied that an actual cash loss of $84,616.70 was sustained, but, under the serious admission made in his letter of October 10th that the excess was a profit figure and which figure was practically repeated by his proof of loss made on November 11th, we are of the opinion that the evidence is factually insufficient to support the verdict of the jury as to that excess.

After a consideration of all of the evidence in this case, we believe that the amount awarded by the jury which is in excess of $84,616.70 is not supported by factually sufficient evidence. Because of that, the Defendant's fourth point is sustained. But, since it is a question only of excessiveness of the verdict, the Plaintiff, under Rule 440, Tex.R.Civ.P., is entitled to exercise its option under the remittitur practice. The judgment of the trial Court will be affirmed if the Plaintiff will file in this Court within twenty days hereof a remittitur in writing of $27,886.81, together with the prejudgment interest attributable to such excess. *A. F. Conner & Sons, Inc. v. Tri-County Water Supply Corporation*, 541 S.W.2d 856 (Tex.Civ.App.—Eastland 1976, writ ref. n. r. e.). If such remittitur is not so filed, the judgment will be reversed and the cause remanded for a new trial.

The judgment is affirmed on condition of remittitur.